### STATE v. THOMAS E. COOPER.

(Filed 25 November, 1925.)

**1. Actions—Consolidation—Banks and Banking—Loans—Statutes—Misdemeanors—Criminal Law.**

An indictment charging the officer of the bank of violating C. S., vol. III, 222(i), and also unlawfully making loans for the bank to certain persons in excess of the maximum percentage of the capital stock and permanent surplus, C. S., vol. III, 220(d), alleges the commission of crimes of the same class, where there are two indictments thereof against the same person, that may be consolidated and tried together by the court.

**2. Same—Officers.**

A bank must act through its officers, and where they have violated the provisions of C. S., vol. III, secs. 222(i) and 220(d), as to lending the bank's money, the offense is committed by the officers under the meaning of the statute, and they are individually indictable therefor.

**3. Same—Capital and Surplus.**

The statute requiring a bank to keep as a reserve on hand, instantly available, funds in an amount equal to at least 15% of its aggregate demand deposits, etc., means all deposits the payment of which can be legally required within thirty days, C. S., vol. III, 216(a), this reserve consisting in cash on hand, balance payable on demand due from other approved solvent banks designated as depositors, C. S., vol. III, 220(g), by resolution of the board of directors approved by the Corporation Commission. C. S., vol. III, 221(g).

**4. Same—Corporation Commission—Receivers.**

The Corporation Commission must require a bank that has not the surplus required by statute, to make it good, and upon its failure to do so within thirty days, may take possession of its property and business. C. S., vol. III, 222(i).

**5. Same.**

The statutory limitation upon a bank making loans to any one person or class of common interests, does not apply to loans, or extensions or renewals thereof, existing at the date of the ratification of the statute, C. S., vol. III, 220(d), and under the later act, C. S., vol. III, 224(i), the unlawful act thus committed is made a misdemeanor, and is punishable as such at the discretion of the court.

**6. Same—Intent—Pleadings—Evidence.**

A conviction may be had of a bank officer who violates the statutory inhibition as to making of loans, etc., and he may be convicted without allegation or evidence of an intent to defraud the bank, or others.

**7. Banks and Banking—Loans—Statutes—Officers—Parties.**

Where the official position of an officer of a bank is such as necessarily to acquaint him of the violation of the statute respecting the making of loans, and to fix him as a party thereto, it is sufficient evidence to sustain his conviction of the misdemeanor therein prescribed. C. S., vol. III, secs. 221(e), 222(i).

VARSER, J., not sitting.

APPEAL by defendant from *Grady, J.,* at November Term, 1924, of NEW HANOVER. No error.

At September Term, 1923, of said court, two bills of indictment charging defendant, and another, with violations of the banking law of this State were returned as true bills. In one, it was charged that Joseph C. Rourk and Thomas E. Cooper, officers of the Liberty Savings Bank, a corporation engaged in the banking business under the laws of this State, at Wilmington, N. C., did on .... January, 1923, unlawfully and wilfully make loans or discounts for and on behalf of said bank, when the reserve was below the amount required to be maintained by law, against the form of the statute, etc.; in the other, it was charged that Joseph C. Rourk, cashier and director, and Thomas E. Cooper, president and director of said Liberty Savings Bank, both being also members of

the finance committee of its board of directors, did on .... January, 1923, unlawfully and wilfully make, obtain or procure from said bank, loans in excess of 25 per cent of the capital stock and permanent surplus of said bank (1) to C. W. Lassiter, (2) to Thomas E. Cooper and (3) to C. E. Wendlenger, against the form of the statute, etc. The violations of the statute with respect to each loan alleged in the latter indictment were charged in separate counts. Both defendants entered pleas of not guilty.

These indictments came on for trial at November Term, 1924, upon said pleas. They were consolidated and tried together. There was a verdict of guilty upon both indictments as to Thomas E. Cooper. From the judgments upon the verdict, defendant appealed. The appeal was heard at the close of the Spring Term, of this Court, and was then continued, upon an *adversari,* to this term.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*Herbert McClammy and W. F. Jones for defendant.*

CONNOR, J. Defendant excepted to the order of the court consolidating the two indictments, in accordance with which they were tried together. This exception is the basis of the first assignment of error.

Each indictment charges violations of the banking laws of North Carolina; one, that defendant, an officer of the Liberty Savings Bank, unlawfully and wilfully made loans for said bank when its reserve was below the statutory requirement. Public Laws 1921, chap. 4, sec. 71; C. S., vol. III, 222(i); the other, that defendant, as president, director and member of the finance committee, unlawfully and wilfully made loans for said bank to persons named therein, the total amount loaned to each of said persons being in excess of the maximum percentage of the capital stock and permanent surplus of said bank, fixed by statute as the limitation of the total direct and indirect liabilities of any person, firm or corporation for money borrowed from a bank, Public Laws 1921, chap. 4, sec. 29; C. S., vol. III, 220(d).

The acts alleged in both indictments are forbidden and made unlawful by the same statute. If such acts constitute crimes or criminal offenses, then they are crimes of the same class, that is, misdemeanors, with the same maximum punishment prescribed by law. Public Laws 1921, Extra Session, chap. 56, sec. 4. There is express statutory authority for the order made by the court, and for the trial of the two indictments together, pursuant to said order. C. S., 4622. *S. v. Jarrett,* 189 N. C., 516; *S. v. Malpass,* 189 N. C., 349; *S. v. Mills,* 181 N. C., 530. There was no error in the order of consolidation. The first assignment of error cannot be sustained.

Defendant, by exceptions duly taken during the progress of the trial, presents to this Court his contention that the acts alleged in the indictments herein do not constitute crimes or criminal offenses, under the laws of this State—at least, do not constitute crimes or criminal offenses for which defendant, as an officer or director of the bank may be convicted and punished. This contention must be sustained unless such acts when committed by the bank or by its officers or directors are made crimes by statute. They are not crimes at common law.

The General Assembly of North Carolina has provided by statute for the regulation of banks, conducted under the laws of this State, and for a thorough supervision of those engaged in the business of conducting them. The term "bank" shall be construed to mean any corporation, partnership or individual engaged in the business of receiving, soliciting or accepting money or its equivalent on deposit. Penalties are prescribed by the statute to secure compliance with its provisions, in some instances to be imposed upon the bank, in others upon its officers or directors, upon failure to comply therewith. Public Laws 1921, chap. 4, and amendments; C. S., vol. III, chap 5.

It is therein provided that every bank shall at all times have on hand or on deposit with approved depositories, instantly, available funds in an amount equal to at least 15 per cent of the aggregate amount of its demand deposits, and 5 per cent of the aggregate amount of its time deposits. "Demand deposits" are defined as all deposits, the payment of which can be legally required within thirty days; "time deposits," as all deposits, the payment of which cannot be legally required within thirty days. Public Laws 1921, chap. 4, sec. 1; C. S., vol. III, 216(a). The reserve required shall consist of cash on hand, and balances payable on demand, due from other approved solvent banks which have been designated as depositories, (sec. 32, C. S., vol. III, 220(g) by resolution of the board of directors and approved by the Corporation Commission. Sec. 55, C. S., vol. III, 221(g). When the reserve falls below the statutory requirement, the bank shall not make new loans or discounts, other than by discounting or purchasing bills of exchange payable at sight or on demand. The Corporation Commission shall require any bank, whose reserve has fallen below the statutory requirement, immediately to make good such reserve, and upon failure of the bank within 30 days to make such reserve good, the commission may forthwith take possession of the property and business of said bank. Sec. 71, C. S., vol. III, 222(i).

It is further provided by said statute that the total direct and indirect liabilities of any person, firm or corporation for money borrowed from any bank, including in the liabilities of a firm the liabilities of the

several members thereof, shall at no time exceed 25 per cent of the capital stock and permanent surplus of any bank having a paid in capital stock of $250,000 or less; this limitation upon loans does not apply to loans or extensions and renewals thereof existing at the date of the ratification of the act. Sec. 29, C. S., vol. III, 220(d). The limitation applies only to new loans made after the ratification of the act of 1921. No specific power is conferred upon the Corporation Commission with reference to the enforcement of this provision, nor is there any specific penalty prescribed for its violation by the bank, or by its officers and directors. For amendment of this section, not material, however, to the decision of the questions presented by this appeal, see Public Laws 1925, chap. 119.

The foregoing are the only provisions of the act of 1921, as ratified on 18 February, 1921, relative to loans by a bank when its reserve is below the statutory requirement, or relative to limitations upon the amount which may be loaned by a bank to any person, firm or corporation. It will be noted, however, that loans in violation of either provision are forbidden by the statute. The making of such loans is unlawful. The wisdom of these two provisions is manifest; banks, whose business is conducted in strict compliance with these two provisions, seldom become insolvent, and thus bring loss and disaster upon depositors and stockholders, and usually, also, upon others who may have no direct interest in the insolvent bank, but who nevertheless suffer by reason of the loss sustained by those who do have such interest. These provisions, although arbitrary as to details are supported in principle by the lessons taught in the school of experience—said to be the best of teachers.

Doubtless, the General Assembly, at the regular session of 1921, thought that the inclusion of these two provisions in the general banking laws of the State, as regulations to be observed by banks and their officers and directors would be sufficient, without providing that the violation of either provision should be a crime. The provision with reference to the reserve was enforcible by the Corporation Commission in the exercise of its power of supervision of banks. No provision was made for the enforcement of the prohibition of loans to individuals exceeding the statutory limitation. Violations of these and other provisions of the statute by directors might result in civil liability, only. Sec. 53, vol. III, 221(e).

However, at the Extra Session, held in December, 1921, the General Assembly amended the act ratified on 18 February, 1921, thereby providing as follows:

"Any offense against the banking laws of the State of North Carolina which is not elsewhere specifically declared to be a crime, or for which

elsewhere a penalty is not specifically provided, is hereby declared to be a misdemeanor, and shall be punishable at the discretion of the Court." Public Laws 1921, Extra Session, chap. 56, sec. 4, C. S., vol. III, 224(i).

The making of loans when the bank's reserve is below the statutory requirement, or in excess of the statutory limitation upon loans to individuals, is unlawful, and therefore an offense against the banking laws of the State by the express provisions of the act of 1921 (Words & Phrases, vol. 6, p. 4915). Such offense is not specifically declared in the act or elsewhere to be a crime; no specific penalty is provided in said act or elsewhere for the offense. Such offense is therefore included within the amendment, and by virtue of its express language, the making of loans in violation of section 29 and section 71, of chap. 4, Public Laws of 1921, is a misdemeanor, and is punishable at the discretion of the court, where such loans have been made since the ratification of the amendment on 19 December, 1921. Defendant's contention that the acts alleged in the indictments herein do not constitute crimes under the laws of this State cannot be sustained.

Defendant insists, however, very earnestly, that if this be conceded, violations of sections 29 and 71, of the act of 1921 are not crimes for which he, as an officer or director of the bank may be convicted and punished. He contends that at most only the bank is liable criminally for such violations of the statute. The language of the amendment is broad and inclusive. The construction which would limit criminal liability to the bank would defeat the manifest purpose of the General Assembly. The loans prohibited can be made for the bank only by officers and directors, and to hold that the bank only is liable criminally, would result, upon its conviction, in the imposition of a fine, the only punishment that can be imposed by the court upon a corporation, thus resulting in most instances in a further depletion of the already impaired resources of the bank, and entailing further loss to depositors and stockholders, for whose protection the provisions are primarily included in the statute. Guilt is personal, and the manifest purpose of the General Assembly in declaring the acts in violation of the statute misdemeanors, punishable at the discretion of the court, was to provide further assurance that these wise and prudent statutory provisions should be obeyed by those who alone could violate them, to wit, officers and directors of the bank. Their personal and individual liability for damages sustained by the bank, its stockholders or other persons, as a result of the violation of these and other provisions of the statute by directors or officers, was evidently not deemed sufficient for the purpose in the mind of the General Assembly. Sec. 53, C. S., vol. III, 221(e). The construction insisted upon by defendant which would limit liability, under the amend-

ment to the bank, cannot be sustained. In passing upon a similar contention, the Court of Appeals of New York, in *People v. Knapp,* 206 N. Y., 373, 99 N. E., 841, says: "A corporation, however, is a mere conception of the Legislative mind. It exists only on paper through the command of the Legislature that its mental conception shall be clothed with power. All its power resides in the directors. Inanimate and incapable of thought, action or neglect, it cannot hear or obey the voice of the Legislature, except through its directors. It can neither act nor omit to act except through them. Hence a command addressed to a corporation would be idle and vain unless the Legislature in directing the corporate body, acting wholly by its directors, to do a thing required or not to do a thing prohibited, meant that the directors should not make or cause the corporation to do what was forbidden or omit to do what was directed." See, also, 14 a C. J., 243, sec. 2073. "Neither in the civil nor the criminal law can an officer protect himself behind a corporation, when he is the actual, present and efficient actor." *U. S. v. Winslow,* 195 Fed., 578, (Affirmed, 227 U. S., 202, 57 L. Ed., 481).

It is an offense against the banking laws of the State of North Carolina for any bank, doing business under and pursuant to said laws, to make new loans or discounts, otherwise than by discounting or purchasing bills of exchange, payable at sight or on demand, or to make dividends of its profits, when the reserve as defined by statute is below the amount required by law, to wit, 15 per cent of the aggregate amount of its "demand deposits," and 5 per cent of the aggregate amount of its "time deposits"; such reserve consists of cash on hand and balances payable on demand, due from depositories designated by the board of directors and approved by the Corporation Commission.

It is also an offense against the banking laws of the State of North Carolina for any bank to make loans to any person, firm or corporation, whose total direct and indirect liabilities for money borrowed exceeds the maximum percentage of the capital stock and permanent surplus of the bank, as fixed by statute, subject to the provisions of said statute, defining what shall not be considered as money borrowed.

Each of the foregoing offenses is a misdemeanor, punishable at the discretion of the court; either the bank or its officers or directors or both may be convicted and punished for the commission of either offense. An intent to defraud the bank, or others is not required to be either alleged in the indictment or proved upon the trial of the issue raised by a plea of not guilty. Neither the bank nor any of its officers or directors have any discretion as to the making of loans which are thus forbidden. Intent is, therefore, not an element of the crime. The wilful doing of the unlawful act constitutes the crime declared by statute to be a misdemeanor, punishable as such in the discretion of the court.

We have examined with care the numerous exceptions of the defendant, taken to the admission or exclusion of evidence by the court. We do not deem it necessary to discuss *seriatim* the assignments of error based upon these exceptions. None of them can be sustained as prejudicial error. There was evidence tending to show that defendant was a director of the Liberty Savings Bank from its organization in January, 1919, until it was closed on 2 February, 1923. During all this time defendant was president of said bank. From March, 1921 to June, 1922, defendant was a resident of the city of Raleigh, engaged in the performance of his duties as vice-president of a bank in said city. He continued as active president of the Liberty Savings Bank—keeping in close touch with its business by correspondence and visits from time to time to Wilmington. By letters to the cashier of said bank, he directed loans to be made, and notes to be discounted. He signed statements filed with the Corporation Commission to the effect that he had, with other directors, examined all bills and notes forming a part of the assets of the bank. He certified as to the condition of said bank. Upon his return to Wilmington, he was on 23 June, 1922, made a member of the finance committee and served on said committee. By the by-laws of the corporation, the power was conferred upon the cashier, with the approval of the president, to make loans for the bank.

The capital stock of the Liberty Savings Bank was $25,000, and its permanent surplus $1,000; the limit of liability for a loan to any person, firm or corporation was therefore, $6,500. The total liabilities of the three persons named in the indictment, for money borrowed from said bank, from 19 December, 1921, to the date of the closing of said bank greatly exceeded this limitation. There is evidence that much of this liability was upon new loans made after 19 December, 1921.

There is abundant evidence that at the time loans were made, the reserve of the bank was below the statutory requirement. Defendant's contention to the contrary is based upon deposits appearing on the books of the banks which are manifestly the result of methods of bookkeeping and not actual deposits of money or its equivalent. These methods were adopted for the purpose of showing a balance due to the bank, which was not in fact payable upon demand, and therefore cannot be considered as constituting legal reserve.

Assignments of error based upon exceptions to the refusal of the court to give instructions as requested by defendant, and to instructions as given in the charge of the court cannot be sustained. His Honor's charge to the jury was exceptionally clear, full and comprehensive. There are 22 assignments of error, based upon 88 exceptions, which are grouped in defendant's brief, for the purpose of presenting his contention that

there was prejudicial error entitling him to a new trial. We cannot sustain these assignments of error. The judgments rendered upon the verdict, are within the discretion vested in the court by the statute. We find no error of law or legal inference and they must be affirmed. There is

No error.

VARSER, J., not sitting.