STATE v. LEXY LEE HAMILTON, JAMES CALLY HAMILTON, CECIL HAMILTON.

(Filed 28 April, 1965.)

**1. Criminal Law § 87—**

Where three defendants are charged in separate indictments with larceny of specified personalty from a specified store and with breaking and entering and safe-breaking at said store, the court may properly consolidate the indictments for trial, the offenses charged being of the same class and so connected in time and place that evidence at the trial upon one would be competent and admissible at the trial of the others. G.S. 15-152.

**2. Arrest and Bail § 3—**

Where police officers have been advised by the proprietor of a store that there had been a robbery at his business and that he had seen at the scene three men, two on foot and one driving an automobile of a specified make

and color with license plates of a specified state, an officer may arrest without a warrant three men apprehended by him in the described vehicle. G.S. 15-41.

**3. Searches and Seizures § 1;    Criminal Law § 79—**

Where an officer making a lawful arrest requests permission to search the car which had been driven by one of the persons arrested, and the officer, in reply to the driver's interrogation as to whether he had a search warrant, states that he did not but that he could obtain one, whereupon the driver consents to the search and hands over the keys to the car, *held* the consent to the search dispenses with the necessity for a search warrant and renders competent evidence obtained in a search of the car.

**4. Same—**

Passengers in a car may not object to incriminating evidence found in the car upon search without a warrant when the person having possession and control of the car consents to the search.

**5. Criminal Law § 21—**

Assignment of error that defendants were not permitted to examine the S.B.I. reports and notes prior to trial cannot be sustained when defendants do not contend at any time that access to such reports was necessary for the preparation of their defense.

**6. Criminal Law § 159—**

Assignment of error in support of which no authority is cited in the brief is deemed abandoned. Rule of Practice in the Supreme Court No. 28.

**7. Criminal Law § 86—**

The refusal of a continuance more than a month after the indictments were returned against defendants having counsel will not be disturbed.

**8. Criminal Law § 93—**

Motion to sequester the State's witnesses is addressed to the discretion of the trial court, and the court's refusal of the motion will not be disturbed in the absence of a showing of abuse.

**9. Criminal Law § 152—**

The setting out of practically all of the evidence in question and answer form is not a compliance with Rule of Practice in the Supreme Court No. 19(4).

**10. Criminal Law § 83—**

Every circumstance calculated to throw light upon the commission of the offense charged is competent, the weight of such evidence being for the jury.

**11. Criminal Law § 101—**

Circumstantial evidence establishing by direct evidence facts raising the reasonable inference of defendants' guilt of the offense charged is properly submitted to the jury.

**12. Burglary and Unlawful Breakings § 4—**

Evidence tending to show that defendants, brothers, were together during the time in question, that they "cased" a particular store on a Saturday morning, that the store was broken and entered that night, a safe therein opened, and certain personalty taken from the store, and also that the property stolen together with a tool, identified by expert testimony as having been used in opening the safe, were found in defendants' car upon their arrest the next day, etc., *held* sufficient to be submitted to the jury as to each defendant on charges of breaking and entering and larceny and safe-breaking.

**13. Appeal and Error § 24;    Criminal Law § 156—**

An assignment of error must present but a single question of law, and exceptions may be gathered under a single assignment only if each relates to the single question sought to be presented, and it is contrary to the Rules to gather under a single assignment of error to the charge a large number of exceptions upon which appellants undertake to raise various and sundry questions.

**14. Same—**

An exception to a long excerpt from the charge must fail if any portion of the charge excepted to is correct.

THIS case was tried before *Parker, J.,* 1 June 1964 Criminal Session of NASH. Petition for *certiorari* allowed by this Court on 18 December 1964.

These defendants were indicted in separate bills of indictment for three offenses, to wit: each charged in separate bills with breaking, entering, and larceny of two chisels from M. C. Braswell Company, a corporation; each charged in separate bills with safe-breaking at the M. C. Braswell Company; and each charged in separate bills of attempted safe-breaking of another safe at M. C. Braswell Company. These bills of indictment were returned at the March-April Session of the Superior Court of Nash County. The cases were consolidated for trial.

The State's evidence tends to show the following facts.

The three defendants entered the general store of M. C. Braswell Company in Battleboro, North Carolina, on Saturday morning, 22 February 1964, between 6:30 and 7:00 A.M. Oliver Hinton, a clerk, and Mr. Viverette, the general manager, were at work. One of the defendants purchased some cigarettes and talked to Mr. Hinton at the cash register. Another of the defendants said he wanted to use the telephone to make a call to Sharpsburg, and did make a call; and the third one walked to the opposite side of the hardware department, between the hardware department and the dry-goods department. Defendant Cecil Hamilton, who had been talking to Mr. Hinton, walked back to

the office and looked in the office; none of the defendants, however, went into the hardware section of the store.

Evidence was offered to the effect that the Braswell Company had purchased six cold chisels about May 1963. Marvin Gay, employee of the store, had placed a cost mark and price on each of these chisels when they were placed in stock, to wit: "W.S.E. — $1.75." Ernie Brantley, assistant manager of the Company, testified that prior to 22 February 1964 only two of the chisels had been sold, one to R. H. Marriott and one to Old Town Farms, and that there were four chisels on the counter in the hardware section when the store closed on that date.

There were two safes in the store, located in the main office. One safe was a large two-door type, approximately 6 feet by 4 feet. It is opened by a dial nest mechanism on the door. The other safe was a small wall type, referred to as a "nigger-head," which was set in concrete in the wall.

The store was "bugged," a microphone being located near the two safes with wires running to a loud speaker placed in Ernie Brantley's bedroom. Brantley lived about one block from the store. About 3:00 A.M. on Sunday, 23 February 1964, Brantley heard a noise coming from the speaker. A dull metal-to-metal noise. He immediately made telephone calls to the Sheriff and other officers. The noise continued with additional sounds of wood being torn away, the sound of something falling to the concrete floor, a thud, like the dial from the safe.

The officers and Brantley arrived at the store at approximately 3:20 A.M. The front door of the store had been forced or pried open. The dial and tumbler nest on the large safe had been knocked off, the doors were open. The dial, dial ring, knob, et cetera, were found on the floor. The safe had been "punched." Various items were kept in the safe, including some cash. The wood had been torn from the small wall safe, and there were some scars on the metal, but this safe had not been opened.

An examination after the officers arrived revealed that two chisels were missing from the hardware section.

In the absence of the jury, the court heard evidence which revealed that there had been a robbery at Minges Beer Company in Rocky Mount at about 10:00 P.M. on Saturday, 22 February 1964. A Mr. Turner had informed the police that he had seen three men, two on foot and one driving a 1963 maroon and cream Cadillac with Maryland license plates, at the beer company. He later identified the defendants as the three men. The police officers had been given this information and were looking for the three men and the Cadillac. The court below found that the officers knew a felony had been committed and

that the officers had reasonable grounds to believe the three defendants were the persons responsible for the commission of the felony.

The Rocky Mount police were looking for the Cadillac and the three men on 23 February 1964. Police Officer Moore, at approximately 7:30 to 8:00 P.M. on Sunday, 23 February 1964, while on patrol duty, saw a 1963 Cadillac, maroon and cream, parked at an Esso station across the street from the Coca-Cola plant in Rocky Mount. The station was closed. The Cadillac had a Maryland license plate. The officer was keeping the car under surveillance when he observed defendant Cecil Hamilton near the automobile. Cecil Hamilton was arrested and placed in the police car. Officer Moore summoned the aid of some other policemen.

When the officers went from the side of the building to the front of the building where the Cadillac was parked, a taxi-cab was parked in front of the building. Thomas Hand was driving the taxicab and James Hamilton was sitting in it. Thomas Hand and James Hamilton went to where the officers were standing. Hamilton said to the officers, "What's the trouble?" Detective James Hoyle told James Hamilton at that time that he was under arrest for safe robbery of the Minges Beer Company.

Detective Hoyle asked James Hamilton if the Cadillac was his. James Hamilton replied that he had driven the car to the Esso station. Hoyle asked James Hamilton for permission to search the car, and Hamilton replied, "Have you got a search warrant?" Hoyle said he did not, but that he could get one. James Hamilton replied, "There's no need of that. You can search." James Hamilton handed the car keys to Detective Hoyle.

A search of the car was made, and the officers found a .38 pistol under the driver's seat, two walkie-talkie radios, a pair of galoshes, several cloth gloves and a plastic money bank in the back on the floorboard of the car. In the trunk there was a brown, olive drab bag which contained an electric hacksaw, electric drill, several drill bits and three or four punches. Also in the trunk was a large electric jackhammer, a chisel and digging tool for the jackhammer, and a crowbar. In the glove compartment the officers found two chisels. Defendant Cecil Hamilton said the chisels were his.

The two chisels taken from the glove compartment of the Cadillac had the very same marking as placed upon them by employee Gay, and they were identified as coming from the Braswell Store.

Cecil Hamilton admitted that he had put the chisels in the glove compartment, but he stated that he had purchased them from an unidentified friend.

Both Cecil Hamilton and James Hamilton were taken to jail where they were questioned further.

About 11:00 P.M. Sunday night, 23 February 1964, Officer Godwin, Sheriff Wood, Lieutenant Tillman and Detective Hoyle went to Hunt's Motel where the Hamiltons were staying, and upon finding Lexy Hamilton in his room the officers entered and placed him under arrest. He was taken to the jail in Nashville.

On Monday, 24 February 1964, each defendant was questioned in the absence of the others. In substance, each stated that all three of them had been together all day Saturday and Sunday. Each stated that they had been drinking beer on Saturday night and had gone to the motel at approximately 12:00 midnight and had gone immediately to bed; that they stopped in Rocky Mount to look up one Albert Farmer; that they left the motel various times, riding around, drinking beer, all of Saturday night; that all three stayed together and no one used the 1963 Cadillac except the three of them. They did not locate Albert Farmer.

Evidence further shows that SBI Agent Thomas assisted in the investigation beginning at approximately 3:20 A.M. on Sunday, 23 February 1964, in the Braswell store. Agent Thomas carried the various items composing the dial of the safe, which he had found on the floor of the store, together with a tapering punch, which had been found in the Cadillac, to the Criminal Laboratory of the FBI in Washington, D. C.

FBI Agent Johnson, who qualified as a tool mark identification expert, examined the dial components and the tapering punch. He testified that he had examined the punch and the markings made on the dial components under a microscope and that, in his opinion, the punch, State's Exhibit No. 10, which was found in the defendants' Cadillac, was used on, and left identifying marks on, the tumbler nest from the safe, State's Exhibit No. 13.

In the trial below, each defendant was represented by counsel of his own choice. I. T. Valentine, Jr., Esquire, represented defendant Lexy Lee Hamilton; Thomas G. Dill, Esquire, represented James Cally Hamilton; and Robert Satterfield, Esquire, represented defendant Cecil Hamilton.

At the close of the State's evidence, each defendant moved for judgment as of nonsuit. Each motion was denied. Each of the defendants, through his counsel announced he would offer no evidence.

The jury returned a verdict of guilty of breaking and entering, larceny and safe-breaking, as charged, against each defendant. Each defendant was acquitted of the charge of attempted safe-breaking.

From the judgments imposed, the defendants gave notice of appeal. They later withdrew their appeal, but due to their inability to obtain a satisfactory agreement with the solicitor and the court below with respect to the disposition of other indictments pending against them in the court below, they employed present counsel to perfect their appeal. Original counsel were permitted to withdraw by consent of the court below on 3 December 1964, which was after the employment of present counsel. We allowed *certiorari* on 18 December 1964.

*Attorney General Bruton, Asst. Attorney General James F. Bullock for the State.*
*Arthur Vann for defendant appellants.*

DENNY, C.J. The defendants' first assignment of error is to the granting of the solicitor's motion to consolidate the cases for trial.
It is provided in G.S. 15-152, in pertinent part, as follows:

"When there are several charges against any person for the same act or transaction or for two or more acts or transactions connected together, or for two or more transactions of the same class of crimes or offenses, which may be properly joined, instead of several indictments, the whole may be joined in one indictment in separate counts; and if two or more indictments are found in such cases, the court will order them to be consolidated * * *."

In *S. v. Combs*, 200 N.C. 671, 158 S.E. 252, in considering the identical question presented by this assignment of error, the Court said:

"The court is expressly authorized by statute in this State to order the consolidation for trial of two or more indictments in which the defendant or defendants are charged with crimes of the same class, which are so connected in time or place as that evidence at the trial of one of the indictments will be competent and admissible at the trial of the others. C.S. 4622 (now G.S. 15-152). *S. v. Cooper*, 190 N.C. 528, 130 S.E. 180; *S. v. Jarrett*, 189 N.C. 516, 127 S.E. 590; *S. v. Malpass*, 189 N.C. 349, 127 S.E. 248."

The three defendants were charged in separate bills of indictment with identical crimes. Therefore, the offenses charged are of the same class, relate to the same crime, and are so connected in time and place that evidence at the trial upon one of the indictments would be competent and admissible at the trial on the others. In such cases there is statutory authority for a consolidation. *S. v. Morrow*, 262 N.C. 592, 138 S.E. 2d 245; *S. v. Bryant*, 250 N.C. 113, 108 S.E. 2d 128; *S. v. Spencer*,

239 N.C. 604, 80 S.E. 2d 670; *S. v. Truelove*, 224 N.C. 147, 29 S.E. 2d 460; *S. v. Norton*, 222 N.C. 418, 23 S.E. 2d 301.

On the record presented, we hold that the court below committed no error in allowing the motion for the consolidation of these cases for trial. The foregoing assignment of error is overruled.

Were the tools and implements found in James Hamilton's automobile, which was being used by the three defendants, admitted in evidence in violation of G.S. 15-27, Article I, § 11 of the Constitution of North Carolina, and the Fourteenth Amendment to the Constitution of the United States? The defendants assign as error the admission of these tools and implements in evidence on the ground that the defendants were arrested without a warrant and that the automobile was searched without a search warrant. They contend the arrests were unlawful and the evidence found in the car was inadmissible.

There is plenary evidence, and the court below so found, that the Rocky Mount police were looking for three men in a 1963 Cadillac, maroon and cream in color, with a Maryland license plate, in connection with a robbery which had been committed the night before at the Minges Beer Company in Rocky Mount. The officers had reasonable ground to believe that the defendants had committed the felony.

G.S. 15-41 provides:

> "A peace officer may without warrant arrest a person: * * *
> (b) When the officer has reasonable ground to believe that the person to be arrested has committed a felony and will evade arrest if not immediately taken into custody."

In *S. v. McPeak*, 243 N.C. 243, 90 S.E. 2d 501, it is said:

> "It is well settled law that a person may waive his right to be free from unreasonable searches and seizures. A consent to search will constitute such waiver, only if it clearly appears that the person voluntarily consented, or permitted, or expressly invited and agreed to the search. Where the person voluntarily consents to the search, he cannot be heard to complain that his constitutional and statutory rights were violated. *S. v. Moore*, 240 N.C. 749, 83 S.E. 2d 912 (where many cases are cited); *Zap v. U. S.*, 328 U.S. 624, 90 L. Ed. 1477; *People v. Preston*, 341 Ill. 407, 173 N.E. 383; 77 A.L.R. 631; 47 Am. Jur., Searches and Seizures, Sec. 71; 79 C.J.S., Searches and Seizures, Sec. 62."

Defendant James Hamilton, in reply to an inquiry about whether he had driven the Cadillac to the place where the officers took custody of it, answered that he had driven the car to that place. When one of the officers requested permission to search the car, James Hamilton said,

"Have you got a search warrant?" The officer replied that he "did not, but we would get a search warrant." James Hamilton replied, "There's no need of that. You can search." James Hamilton then handed the car keys to Detective Hoyle and the search was made.

It is generally held that the owner or occupant of premises, or one in charge thereof, may consent to a search of such premises, and such consent will render competent evidence thus obtained. Consent to the search dispenses with the necessity of a search warrant altogether. *S. v. Moore,* 240 N.C. 749, 83 S.E. 2d 912. The defendant James Hamilton consented to the search now complained of and thereby waived the necessity for a search warrant.

Cecil and Lexy Hamilton, according to their statements, were passengers in the car, traveling with their brother James Hamilton, and connected themselves with the tools and implements found therein, claiming ownership of some of the articles and stating that a company they operated in Maryland owned the remainder of them. Nevertheless, Cecil and Lexy Hamilton had no right to object to the search of James Hamilton's car. Their rights were not invaded. A guest or passenger in an automobile has no grounds for objection to a search of the car by a peace officer. *S. v. McPeak, supra.*

This assignment of error is overruled.

The defendants' fourth assignment of error is to the overruling of their motion to be permitted to examine the FBI reports and notes prior to the trial. However, the defendants did not assert that access to such reports was necessary for the preparation of their defense. They do not so contend now. It will also be noted that counsel for each defendant declined to cross examine FBI Agent Johnson as to his testimony or his notes. Moreover, the defendants do not cite any authority in support of this assignment of error, and the same is overruled. Rule 28, Rules of Practice in the Supreme Court, 254 N.C. 810.

Assignment of error No. 5 relates to defendants' motion for a continuance which was denied.

The defendants were arrested on 23 February 1964. The record reveals that on or before 26 February 1964 each defendant had employed counsel. It is further disclosed by the record that at the session of the Superior Court of Nash County at which the defendants were tried, the three defendants had some eleven cases pending against them. In the meantime, defendants' counsel had had more than three months to prepare for trial; in fact, the only basis for the request for a continuance was the fact that the solicitor did not inform them until 29 May 1964 that probably only the cases involving the breaking and entering, larceny and safe-breaking, *et cetera,* at the M. C. Braswell Company would be tried at the June 1964 Criminal Session of the Nash Superior

Court. Furthermore, the bills of indictment upon which these defendants were tried had been returned at the March-April 1964 Session of the Superior Court of Nash County.

> "A motion for a continuance is addressed to the sound discretion of the trial court and the denial of the motion will not be disturbed in the absence of a showing of abuse of discretion or that defendant has been deprived of a fair trial." Supplement to Vol. I, Strong's North Carolina Index, § 86, page 249; *S. v. Patton,* 260 N.C. 359, 132 S.E. 2d 891; *S. v. Stroud,* 254 N.C. 765, 119 S.E. 2d 907; *S. v. Kirkman,* 252 N.C. 781, 114 S.E. 2d 633.

We hold that this assignment of error is feckless and is, therefore, overruled.

The defendants assign as error the failure of the court below to sustain their motion for sequestration of the State's witnesses.

Under our decisions, the sequestration of witnesses is not a matter of right but of discretion on the part of the trial judge. The exercise of such discretion is not reviewable in the absence of abuse of discretion. No abuse of discretion is shown in this respect on the record before us. *S. v. Spencer,* 239 N.C. 604, 80 S.E. 2d 670, and cited cases.

This assignment of error is likewise overruled.

The defendants set out numerous assignments of error challenging the admissibility of the State's evidence. In fact, the admissibility of practically all of the State's evidence is challenged, a large part of which is set out in question and answer form, contrary to the requirements of Rule 19(4) of the Rules of Practice in the Supreme Court, 254 N.C. at page 800. The objection to the admission of a substantial part of the evidence is based on the contention that the defendants were unlawfully arrested without a warrant and that the evidence obtained in searching the automobile involved was inadmissible because such evidence was obtained without a search warrant. In view of the disposition which we have heretofore made with respect to these objections, we hold that these assignments of error are without merit. Moreover, most of them are broadside and do not conform to the requirements of the Rules of this Court.

Assignments of error Nos. 25 through 35 are directed to the failure of the court below to sustain defendants' respective motions for judgment as of nonsuit. The defendants contend that the evidence offered in the trial below is all circumstantial and raises only conjecture and speculation as to the guilt of the defendants and is, therefore, insufficient to warrant its submission to the jury.

We concede that the State relied on circumstantial evidence in the trial below. However, in criminal cases, every circumstance that is cal-

culated to throw any light upon the supposed crime is admissible. The weight of such evidence is for the jury.

In the case of *S. v. Alston*, 233 N.C. 341, 64 S.E. 2d 3, this Court said:

> "True, the verdicts here rest entirely upon circumstantial evidence, 'but circumstantial evidence is not only a recognized and accepted instrumentality in the ascertainment of truth, but it is essential, and, when properly understood and applied, highly satisfactory in matters of the gravest moment.' *S. v. Brackville*, 106 N.C. 701, 11 S.E. 284; *S. v. Cash*, 219 N.C. 818, 15 S.E. 2d 277. 'In some classes of cases the chain of evidence is said to be no stronger than the weakest link, but this is not always true, for sometimes facts, which seem weak by themselves, may be woven together like twigs in a bundle, or wires in a cable, and so a strong case may be constructed of facts which would be weak by themselves.' Lockhart, North Carolina Handbook of Evidence, 2d Ed., Sec. 266, p. 316."

The three defendants are brothers. The evidence tends to show that they were traveling together and were returning from a trip to Florida; that they "cased" the Braswell store on Saturday morning, 22 February 1964. Two chisels from the Braswell store were found in the glove compartment of defendants' car. The punch found in the defendants' car was identified by the FBI agent as the one used on the tumbler nest from the Braswell safe. Defendants stated to the officers that they were together all during Saturday night; that no one else had used the 1963 Cadillac. The car in which they were traveling contained many tools and implements commonly used by persons for breaking, entering and safe-cracking. Either personal ownership of these tools was claimed or that they belonged to a business operated by them in Maryland.

When all of the evidence adduced in the trial below is considered in the light most favorable to the State, as it must be on motion for judgment as of nonsuit, we hold that it was sufficient to carry the case to the jury against each of these defendants on the charges set out in the respective bills of indictment. *S. v. Alston, supra; S. v. Weinstein*, 224 N.C. 645, 31 S.E. 2d 920; *S. v. Ham*, 224 N.C. 128, 29 S.E. 2d 449.

All these assignments of error are overruled.

Defendants' assignment of error No. 36 purports to challenge the correctness of the court's charge to the jury. Under this one assignment of error the appellants rely upon 49 exceptions upon which they undertake to raise various and sundry questions. Many of these exceptions are to portions of the charge covering several pages of the record. If any por-

tion of the charge within an exception is correct, the exception must fail. *S. v. Atkins*, 242 N.C. 294, 87 S.E. 2d 507. Then, in assignment of error No. 37, the appellants purport to except to the charge in its entirety.

This Court has tried repeatedly to impress upon the members of the Bar that "an assignment of error must present a single question of law for consideration by the court." An assignment which attempts to raise several questions is broadside. *Dobias v. White*, 240 N.C. 680, 83 S.E. 2d 785; *Suits v. Insurance Co.*, 241 N.C. 483, 85 S.E. 2d 602; *Spears v. Randolph*, 241 N.C. 659, 86 S.E. 2d 263; *S. v. Atkins, supra; Rigsbee v. Perkins*, 242 N.C. 502, 87 S.E. 2d 926; *Allen v. Allen*, 244 N.C. 446, 94 S.E. 2d 325; *Weavil v. Trading Post*, 245 N.C. 106, 95 S.E. 2d 533; *Gurganus v. Trust Co.*, 246 N.C. 655, 100 S.E. 2d 81; *Hayes v. Bon Marche*, 247 N.C. 124, 100 S.E. 2d 213; *Bulman v. Baptist Convention*, 248 N.C. 392, 103 S.E. 2d 487; *Hines v. Frink* and *Frink v. Hines*, 257 N.C. 723, 127 S.E. 2d 509; *Horton v. Redevelopment Commission*, 262 N.C. 306, 137 S.E. 2d 115.

An appellant may group a number of exceptions under a single assignment of error when, and only when, such exceptions relate to the single question of law raised by the assignment of error. *Dobias v. White, supra*.

Assignments of error Nos. 36 and 37 are overruled. Even so, we find nothing in the court's charge in the trial below that in our opinion is prejudicial to these defendants or any one of them.

We have had considerable difficulty with the record and defendants' brief in this case. The record consists of 331 pages, and while the evidence covers only 112 pages of the record, the assignments of error, as grouped and set out in the record, cover 129 pages. Moreover, while the defendants' brief consists of 99 pages, many of the 389 exceptions set out in the record and in the assignments of error have not been brought forward and discussed in the brief, as required by the Rules of this Court, and will, therefore, be deemed abandoned. Rules of Practice in the Supreme Court, 254 N.C. 810.

We find no error in the trial below that in our opinion would justify a new trial.

No error.