STATE OF NORTH CAROLINA v. WILLIAM CHARLES MOURNING, RUDOLPH LANGLEY, AND WILLIE ROBERT MILLS, ALIAS THE BISHOP

No. 692SC41

(Filed 28 May 1969)

**1. Indictment and Warrant § 14;   Extradition— motion to quash indictment on ground of invalid extradition**

In this armed robbery prosecution, the trial court did not err in denying defendants' motions to quash the indictments on the ground that the extradition proceedings under which they were returned to this State for trial were invalid, notwithstanding the State did not produce the records pertaining to the extradition proceedings and affirmatively show that they were regular, since the extradition proceedings may not be challenged after the alleged fugitive has been delivered into the jurisdiction of the demanding state.

**2. Indictment and Warrant § 14— grounds for quashing indictment**

An indictment may be quashed for want of jurisdiction, irregularity in the selection of the grand or petit jury, or for defect in the bill of indictment.

**3. Indictment and Warrant § 14— failure of indictment to show year returned**

In this armed robbery prosecution, the trial court properly denied defendants' motion to quash the indictment on the ground that the caption did not show the year in which it was returned, the caption not being part of the indictment, and the Clerk of Superior Court having testified as to the session at which the indictment was returned.

**4. Criminal Law § 92— consolidation of cases for trial**

The trial court is authorized by statute to order that prosecutions of several defendants for offenses growing out of the same transaction be consolidated for trial.

**5. Criminal Law § 92— consolidation of armed robbery prosecutions for trial**

The trial court did not err in consolidating for trial prosecutions against three defendants for armed robbery where the defendants were charged in separate indictments with identical crimes.

**6. Criminal Law § 167— burden of showing prejudicial error**

Appellants have the burden not only to show error but also that the error complained of affected the result adversely to them.

**7. Robbery § 4— nonsuit — sufficiency of evidence**

The evidence is *held* sufficient to be submitted to the jury as to the guilt of each of the defendants of the crime of armed robbery.

APPEAL by defendants from *Cohoon, J.,* at the 12 August 1968 Session of BEAUFORT Superior Court.

By separate indictments, proper in form, defendants were charged

with the armed robbery of Mrs. Evelyn Brown on 10 February 1968. The indictments against defendants Mourning and Langley, case Nos. 6508 and 6510, indicate that they were returned at the March 1968 Session of Beaufort Superior Court. The indictment against defendant Mills, case No. 6511, indicates that it was returned at the "March Term 19..... " of Beaufort Superior Court. The same grand jury foreman signed all three indictments.

Defendants Langley and Mills were extradited from the State of New Jersey. When they were arraigned in Beaufort Superior Court, they moved to quash the bills of indictment against them on the grounds that they were illegally held by reason of improper extradition. After a hearing, the motions were overruled. Defendant Mills moved to quash the bill of indictment against him on the grounds that it was dated "March Term 19. ...." This motion was denied. The solicitor moved that the cases be consolidated for purpose of trial and the court allowed the motion.

Principal evidence for the State was given by Mrs. Evelyn Brown and her mother, Mrs. Mary Hyatt. Their evidence is summarized as follows: On 10 February 1968, Mrs. Brown was at her home in Washington, N. C., where she was being visited by her mother and three young children. From 1949 until 1966, Mrs. Brown was employed as a caseworker with the Beaufort County Welfare Department. On and prior to 10 February 1968, she was employed as a social worker with the Washington city schools. Much of her work had been with Negroes, and quite frequently Negroes would come to her home in the evening to see her in connection with her work. Around 7:00 on the evening of 10 February 1968, she went to her front door which contained glass windows and saw a young male Negro on the outside. She unlocked the door, after which the man pushed the door open and he and two other Negroes rushed into Mrs. Brown's living room. Although she did not know the names of the men at that time, she recognized each of them as persons that she had seen before in connection with her employment. She later identified the defendants as the three men. Mills had a pistol which he pointed towards her and asked if her husband was at home; she advised that her husband was not at home and Mills told her if she did not do as he said he would kill her. Langley and Mourning also had pistols and pointed them at her. Mrs. Hyatt was sitting on a sofa in the living room and Mrs. Brown's nine-year-old nephew was sitting beside her. Two little girls, ages nine and ten, were in the bathroom. Mills asked Mrs. Brown where she had her money hidden and she told him that she did not have any money in the house, that

she kept her money in the bank. At first Mourning stayed at the front door and kept watch on Mrs. Hyatt and the outside; Mills and Langley went into various rooms of the house searching closets, drawers, etc. Mills pushed Mrs. Brown from one room to another and Langley pushed her around the living room; Langley threatened to shoot Mrs. Brown and one of the children. Mills took a small purse with money in it and also took money and other things from pocketbooks belonging to Mrs. Brown and Mrs. Hyatt. Langley took Mrs. Brown's watch from a shelf in the kitchen, snatched the telephone from the wall and told Mrs. Brown if she called the police he would kill her, that they had not found what they were looking for and would be back. Among other things, Mourning entered Mrs. Brown's bedroom, took jewelry from her jewelry box, took her engagement ring, college ring, silver bracelet, a string of pearls, and other jewelry including her husband's watch. After staying in the house for a period of some twenty minutes, defendants left by way of the front door. Shortly thereafter, Mrs. Brown left by a rear door, went to a neighbor's house and called the police.

The jury found defendants guilty as charged and from judgments imposing lengthy prison sentences, defendants appealed.

*Attorney General Robert Morgan, Assistant Attorney General William W. Melvin and Staff Attorney T. Buie Costen for the State.*

*John A. Wilkinson for defendant appellant Mills, W. B. Carter for defendant appellant Langley and Leroy Scott for defendant appellant Mourning.*

BRITT, J.

The first question posed by this appeal is: Did the trial court commit error in failing to quash the indictments against the defendants Langley and Mills?

Said defendants contend that the extradition proceedings under which they were arrested in New Jersey and returned to North Carolina were invalid. The record is silent regarding the proceedings except for the order entered by the New Jersey Court, which order is summarized as follows: A hearing was held on application of North Carolina Solicitor Herbert Small for the extradition of Rudolph Langley and Willie Robert Mills, charged with the crime of armed robbery in North Carolina; defendants were represented by Mr. Gikas and the State of New Jersey was represented by the assistant county prosecutor; testimony of two witnesses was heard, said witnesses identifying the defendants as having been in the jurisdiction

of North Carolina on the date of the alleged offense; pursuant to the hearing, it was ordered that Langley and Mills be delivered by the Sheriff of Bergen County to the Sheriff of Beaufort County, North Carolina. The order was signed by a judge of the Bergen County Court.

[1]    Defendants Langley and Mills contend that when they made their motions to quash in the superior court, it became incumbent upon the State to produce all records pertaining to the extradition proceeding and affirmatively show that they were regular. The only authority cited by said defendants in support of their contention is "American Jurisprudence 2d, Extradition, Sections 64, 65 and 66."

A review of the American Jurisprudence sections cited reveals that they do not support the contention of defendants. To the contrary, 31 Am. Jur. 2d, § 74, at p. 980, declares:

> "In interstate extradition proceedings, the prisoner is held under the extradition process only until such time as he reaches the jurisdiction of the demanding state, and is thenceforth held under the process issued out of the courts of that state. Consequently, the regularity of extradition proceedings may be attacked only in the asylum state; after an alleged fugitive has been delivered into the jurisdiction of the demanding state, the proceedings may not be challenged."

[2]    Our research does not disclose that this identical question has been answered by the Supreme Court of our State. In 4 Strong, N. C. Index 2d, Indictment and Warrant, § 14, pp. 359 and 360, we find the following: "An indictment may be quashed for want of jurisdiction, irregularity in the selection of the grand jury or petit jury, or for defect in the bill of indictment." We find no support for the contention submitted by defendants Langley and Mills, therefore, the assignment of error is overruled.

[3]    The next assignment of error relates to defendant Mills' motion to quash the indictment against him on the ground that the indictment did not show the year in which it was returned. The record discloses the following caption on the Mills indictment:

"INDICTMENT (#6511) — VARIOUS CASES. (Mills)
STATE OF NORTH CAROLINA                          SUPERIOR COURT
BEAUFORT COUNTY.                          March Term, A.D. 19......."

A similiar question was raised in the case of *State v. Davis*, 225 N.C. 117, 33 S.E. 2d 623, where, in a bill of indictment returned in the Superior Court of Rowan County, the caption erroneously stated Randolph County as follows:

STATE v. MOURNING

"STATE OF NORTH CAROLINA                    SUPERIOR COURT
RANDOLPH COUNTY                    September Term, 1944"

A motion to arrest the judgment was made, but the Supreme Court held that "the caption is not part of the indictment and its omission is no ground for arresting judgment." In the case before us, the record discloses that when defendant Mills made his motion to quash, the Clerk of Superior Court of Beaufort County was sworn and testified that during the 11 March 1968 Session of Superior Court for Beaufort County the grand jury considered a bill of indictment in case No. 6511 and returned a true bill.

We hold that the bill of indictment was sufficient and the assignment of error is overruled.

In their next assignment of error, defendants contend that the trial court improperly consolidated their cases for trial.

Defendants Mourning and Langley strenuously contend that it was prejudicial to them to be tried jointly with defendant Mills inasmuch as Mills was a person of bad reputation in Beaufort County and possessed a long criminal record. The record before us reveals that defendants Mourning and Langley also had long criminal records. Mourning's previous convictions were for breaking and entering, larceny, assault with a knife, affray, and drunk and disorderly conduct; Langley's previous convictions included three separate breaking and entering cases. It appears that Mills had been convicted for breaking and entering, receiving stolen property, forgery and escape in several cases.

[4]  It is well settled in this jurisdiction that the trial court is authorized by statute to order that prosecutions of several defendants for offenses growing out of the same transaction be consolidated for trial. 2 Strong, N. C. Index 2d, Criminal Law, § 92, pp. 623, 624.

In *State v. Hamilton*, 264 N.C. 277, 141 S.E. 2d 506, (cert. den. 384 U.S. 1020, 16 L. Ed. 2d 1044), three defendants were charged in separate indictments with larceny of specified personalty from a specified store, with breaking and entering the store, and safebreaking. In an opinion by Denny, C.J., it is said:

"The defendants' first assignment of error is to the granting of the solicitor's motion to consolidate the cases for trial.

*          *          *

In *S. v. Combs*, 200 N.C. 671, 158 S.E. 252, in considering the identical question presented by this assignment of error, the Court said:

'The court is expressly authorized by statute in this State to order the consolidation for trial of two or more indictments in which the defendant or defendants are charged with crimes of the same class, which are so connected in time or place as that evidence at the trial of one of the indictments will be competent and admissible at the trial of the others. C.S. 4622 (now G.S. 15-152). *S. v. Cooper,* 190 N.C. 528, 130 S.E. 180; *S. v. Jarrett,* 189 N.C. 516, 127 S.E. 590; *S. v. Malpass,* 189 N.C. 349, 127 S.E. 248.'

The three defendants were charged in separate bills of indictment with identical crimes. Therefore, the offenses charged are of the same class, relate to the same crime, and are so connected in time and place that evidence at the trial upon one of the indictments would be competent and admissible at the trial on the others. In such cases there is statutory authority for a consolidation. [Citing numerous authorities.]"

**[5]** We hold that the trial court did not err in consolidating the cases for trial and the assignment of error relating thereto is overruled.

Defendants' next assignment of error relates to exceptions taken to rulings of the trial court on the admission of evidence.

**[6]** It is well-settled law in this State that the burden is on defendants not only to show error but also to show that the error complained of affected the result adversely to them, as the presumption is in favor of the regularity of the trial below. 3 Strong, N. C. Index 2d, Criminal Law, § 167, pp. 126, 127. We do not deem it necessary to discuss each of the exceptions relating to the testimony; suffice to say, we have carefully reviewed the record pertaining to the testimony complained of and conclude that no prejudicial error was committed by the trial court with respect to said testimony. The assignment of error is overruled.

**[7]** At the close of the State's evidence, defendants moved for judgment as of nonsuit and renewed their motions at the conclusion of all the evidence. Although they excepted to the failure of the court to grant their motions, they do not bring the exceptions forward in their brief, therefore, they are deemed abandoned. Nonetheless, we hold that the evidence was sufficient to withstand the motions of nonsuit by each defendant and the assignments of error relating thereto are overruled.

Although defendants are indigent, they were ably represented in the superior court and in this Court by capable and experienced at-

torneys. Their trial was presided over by an experienced and eminently qualified judge. We conclude that defendants received a fair trial, free from prejudicial error, and the sentences imposed were within statutory limits.

No error.

MALLARD, C.J., and PARKER, J., concur.