STATE OF NORTH CAROLINA v. WILLIAM M. CURTIS

No. 744SC410

(Filed 7 August 1974)

1. **Homicide § 15; Robbery § 3— evidence of "loud mufflers" on car — admissibility**

     The trial court did not err in allowing a detective to testify that an automobile belonging to defendant's friend had "loud mufflers," since other testimony indicated that defendant had been seen in the company of that friend on the date the crime was committed, the victim in his dying declaration described his assailant's car as "souped-up," a "hot kind of car, a race car," and the witness's description of the sound of the vehicle as having loud mufflers was a layman's description which obviously could be understood by the jury.

2. **Criminal Law § 88— cross-examination of defense witness**

     Trial court did not err in allowing the State to inquire of defendant's witness concerning a statement made by defendant in the witness's presence on the day after the homicide.

3. **Criminal Law § 89— cross-examination of witness as to possession of marijuana — admissibility for impeachment**

     The trial court in a homicide and armed robbery case did not err in allowing the solicitor to question a witness of defendant with respect to the witness's possession of marijuana.

4. **Homicide § 21; Robbery § 4— armed robbery — death by stabbing — sufficiency of evidence**

     Evidence in a homicide and armed robbery case was sufficient to be submitted to the jury where it tended to show that defendant and his victim were seen on a fishing pier and having coffee together, defendant took his victim about a mile from the pier where he robbed and stabbed him, the victim described his murderer's vehicle as a "souped-up" blue car with a raised rear end, a "hot kind of car, a race car," and defendant was in possession of a blue car with a raised rear end on the day of the crime.

APPEAL by defendant from *Martin (Robert M.), Judge*, 22 October 1973 Session of Superior Court held in ONSLOW County. Heard in the Court of Appeals on 17 June 1974.

Defendant was charged in two bills of indictment: (1) with the murder of Jesse L. Wilson, and (2) with the armed robbery of Jesse L. Wilson. When the cases were called for trial, the solicitor announced, in the homicide case, that the State would not seek a conviction of first degree murder, but would seek a conviction of second degree murder or manslaughter, as the evidence might justify.

State v. Curtis

The State's evidence tends to show the following: Approximately at midnight of 12 August 1973, defendant engaged in a conversation with Jesse L. Wilson on Paradise Pier at West Onslow Beach. Defendant told Wilson that they were catching fish at another pier, and invited Wilson to ride with him to see. After driving about a mile down the highway, defendant pulled over to the side of the road. He stated that surf fishing was in progress on the beach. Defendant and Wilson walked down on the beach. After getting to the beach, defendant drew a knife and demanded Wilon's wallet. Defendant removed the money ($9.00), handed the wallet back and told Wilson he was going to kill him. Defendant then stabbed Wilson with the knife and ran. Wilson was able to pull the knife from his stomach and to make his way back to the highway. The foregoing account of events was gained through Wilson's dying declarations made to Mr. Thomas George Gurganus (Gurganus) and to Deputy Donald Thomas (Thomas).

Gurganus stopped on the highway to assist Wilson; but when he saw how serious the situation was, he drove to Paradise Pier to seek additional assistance. He found Deputy Thomas at the pier. After calling for an ambulance, Gurganus and Thomas returned to aid Wilson. In his statements, Wilson described his assailant as a young white male wearing a stocking cap and blue jeans. He described the car his assailant was driving as a "souped-up" blue car with a raised rear end, a "hot kind of car, a race car."

The State's evidence further tended to show that defendant was observed talking to Wilson (the deceased) at Paradise Pier during the late hours of the night in question; that they had coffee together in the snack shop; and that they left the pier together a short while before Wilson was found on the highway by Gurganus.

The State's evidence tended to show that defendant and one Wentworth were often seen together; that they were seen together during the day preceding and during the night in question; and that Wentworth owned a 1970 Chevelle SS, blue with a black vinyl top, which appeared to be jacked up in the rear and which had loud mufflers. Defendant was seen driving the Wentworth vehicle during the night in question.

Defendant's evidence tends to show that he and Wentworth spent the day preceding and the night in question at West Ons-

low Beach and Paradise Pier; that they drove there in Wentworth's blue Chevelle. They visited with a friend and then returned to Camp Geiger. Defendant testified that he did not meet Wilson at the pier and did not rob and stab him.

The jury found defendant guilty of second degree murder and guilty of armed robbery.

*Attorney General Morgan, by Assistant Attorney General Wood, for the State.*

*Ellis, Hooper, Warlick, Waters & Morgan, by William J. Morgan, for the defendant.*

BROCK, Chief Judge.

[1] Defendant contends the trial court committed prejudicial error in allowing Detective Jarman to testify that the Wentworth automobile had "loud mufflers."

Two witnesses prior to Detective Jarman had testified as to the description of a vehicle given by the victim in a dying declaration. The vehicle described was one in which the victim had ridden when he left the pier with his assailant. The vehicle was described by the victim as a blue souped-up car with a raised rear end, a hot kind of car, a race car.

The State's evidence tended to show that defendant and Wentworth were at Paradise Pier together on the night in question. Detective Jarman examined the Wentworth vehicle and described it as a blue 1970 Malibu, which appeared to be jacked up in the rear, and that when the engine was "raced," it had loud mufflers. Under the circumstances, a description of the Wentworth vehicle was relevant as a circumstance to be considered by the jury. The witness' description of the sound of the vehicle as having loud mufflers was a layman's description, which obviously could be understood by the jury. The witness was not required to describe the intensity of the sound in decibels.

"[I]n criminal cases, every circumstance that is calculated to throw any light upon the supposed crime is admissible. The weight of such evidence is for the jury." *State v. Hamilton,* 264 N.C. 277, 141 S.E. 2d 506.

The description of a "souped-up" blue car with a raised rear end, a "hot kind of car, a race car," in the victim's dying declara-

tion, coupled with the testimony of witnesses, which placed defendant in the company of the victim on the night in question, along with testimony that defendant was driving the Wentworth vehicle, and the detective's description of the Wentworth vehicle are all circumstances which were properly to be considered by the jury. This assignment of error is overruled.

[2] Defendant contends the trial court committed error in allowing the solicitor to ask a question which made reference to a statement not in evidence. This argument has no merit.

On cross-examination, the solicitor asked the witness Wentworth about a statement made by defendant in the witness' presence on the day after the homicide.

Clearly, the question was asked in good faith and it is permissible for the solicitor to employ leading questions on cross-examination. It was permissible for the State to inquire of defendant's witness concerning a statement made about the event by defendant in the witness' presence. This assignment of error is overruled.

[3] Defendant contends the trial court committed error in allowing the solicitor to question defendant's witness Wentworth as to possession of illegal drugs. The solicitor asked Wentworth if he had any marijuana with him in his car. Defendant's objection was overruled. Wentworth answered in the negative; however, he admitted the police found marijuana in his clothes, and he admitted the marijuana was his.

It is permissible, for purposes of impeachment, to cross-examine a witness, including the defendant in a criminal case, by asking disparaging questions concerning collateral matters relating to his criminal and degrading conduct. Such questions relate to matters within the knowledge of the witness, not to accusations of any kind made by others. *State v. Williams*, 279 N.C. 663, 185 S.E. 2d 174. This assignment of error is overruled.

[4] Defendant contends the trial court committed error in refusing to grant defendant's motion for dismissal at the close of defendant's evidence and at the close of State's rebuttal evidence.

" 'When the motion for nonsuit calls into question the sufficiency of circumstantial evidence, the question for the court is whether a reasonable inference of defendant's guilt may be drawn from the circumstances. If so, it is for the jury to decide

whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is actually guilty.' *State v. Rowland*, 263 N.C. 353, 139 S.E. 2d 661." *State v. Cutler*, 271 N.C. 379, 156 S.E. 2d 679.

Defendant attacks the credibility of the witnesses for the State by citing instances of inconsistencies in their testimony. The credibility of the witnesses' testimony is to be determined by the jury. There were sufficient circumstances presented by the evidence to make a *prima facie* case for submission to the jury. This assignment of error is overruled.

Defendant contends the trial court committed error in allowing questions and answers in the State's rebuttal evidence which were merely cumulative and did not contradict any evidence offered by defendant.

Rebuttal testimony by the witnesses tended to show that defendant and Wentworth were at the pier prior to and after the death of the victim. Their testimony was to the effect that defendant had stated that he had been given $140.00 by the Marine Corps and would skip the country except that people would think he was guilty; also, that defendant stated that Dillon Wood had pointed him out as the murder of the victim. This evidence tended to rebut defendant's evidence. This assignment of error is overruled.

In our opinion, defendant received a fair trial, free from prejudicial error.

No error.

Judges MORRIS and VAUGHN concur.