STATE v. CHARLIE ALSTON AND JESSE ALSTON.

(Filed 21 March, 1951.)

**1. Criminal Law § 52a (3)—**

Circumstantial evidence is a recognized and accepted instrumentality in the ascertainment of truth, and in many cases is sufficient to overrule defendant's motion to nonsuit even though the individual facts may be weak in themselves when they present a strong case considered together.

**2. Criminal Law § 52a (1)—**

> Upon motion to nonsuit the court is required to ascertain merely whether there is evidence to sustain the allegations of the indictment, and not whether it be true or the jury should believe it.

**3. Larceny § 7—Circumstantial evidence of guilt of larceny held sufficient.**

> Evidence tending to show that on the morning following the night the tobacco of the prosecuting witness was stolen, defendants were seen in the truck owned by one of them when it became stuck on the side of the road, that the truck was then loaded with tobacco, but that later when the truck was pushed out of the ditch there was no tobacco in it, and that the tobacco belonging to the prosecuting witness was thereafter found in the woods opposite the place where the truck had been stuck, *is held* sufficient, with the other circumstantial evidence in the case, to overrule defendant's motions to nonsuit in this prosecution for housebreaking and larceny.

APPEAL by defendants, Charlie Alston and Jesse Alston, from *Parker, J.,* and a jury, at January Criminal Term, 1951, of WARREN.

Criminal prosecution tried upon a two-count bill of indictment charging both defendants with the perpetration of the following offenses on 12 October, 1950: (1) breaking and entering a building wherein leaf tobacco belonging to Willis Pritchard was stored and kept, with intent to commit larceny therein contrary to G.S. 14-54; and (2) larceny of leaf tobacco of the value of one thousand dollars, the property of Willis Pritchard.

The State's evidence tends to show that Willis Pritchard had stored about fifteen hundred pounds of leaf tobacco, of the value of approximately one thousand dollars, in a dwelling-packhouse near his home. He last saw the tobacco on 10 October, 1950. When he returned to the packhouse on the morning of 12 October, 1950, the locks had been broken and pulled off and all of the tobacco was gone. Early that night Sheriff Roy Shearin and others, including Willis Pritchard, while out searching for clues, saw signs on the shoulder and side of the Lickskillet-Inez dirt road, at Walker's Hill about ten miles from the Pritchard place, indicating that a motor vehicle had been stuck in the side ditch, next to a thick wooded area, with dense undergrowth extending up to the road. They saw a leaf of tobacco on a bush side of the road. Out in the thicket, from thirty feet to a hundred yards from the side of the road, they found about eleven hundred pounds of leaf tobacco hidden in stump holes, behind bushes, and in low places. Willis Pritchard testified that the tobacco was his and he identified it from the way it was tied; he said it had been tied by his mother who is left-handed, by his tenant, his tenant's wife, and by himself; that his mother, because of arthritis in her hands, tied loose left-hand ties and capped it; that he, Willis Pritchard, made a tie with a big, long head without cap; that his tenant's wife made a "near"

medium-size head with cap; that his tenant tied a head about the same as his but with not quite as many leaves in a bundle. About fifty or sixty tobacco sticks were found in the woods with the tobacco and also a tobacco rack, which Willis Pritchard identified as his. He said he made the rack out of "one by fours" and knew it, and that the sticks were made by his father out of cut oak and that he knew them.

The same night the tobacco was found, and only a short while thereafter, Sheriff Shearin saw both defendants at a nearby store. Charlie Alston's truck was there, in a muddy condition, and the Sheriff asked him if he had been stuck and Charlie replied: "Yes, that it had been stuck on Walker's Hill."

The witness Arthur Robinson testified in substance that he remembered when the tobacco was stolen; that he met Charlie Alston that morning just before sunrise on the Lickskillet road; that when they met, Charlie pulled his truck too far to the side and hit the soft shoulder and ran into the ditch; that, after passing, he looked back and saw the truck standing in the ditch, and that the truck had tobacco on it,—he estimated about twelve hundred pounds.

Luther Palmer testified that he was in the car with Arthur Robinson and recognized both defendants on the truck and saw tobacco on it. He said he later showed the Sheriff where they met the truck and saw it get stuck.

Rufus Dent testified that about 5:00 or 5:30 o'clock a.m. of the "day when Sheriff Shearin came there that night when they said Mr. Pritchard's tobacco was stolen," he met Charlie Alston walking up the Lickskillet road about half a mile from where the truck was stuck and went back to help him push it out. Jesse Alston was at the truck when he arrived; that he, with the help of some others, pushed the truck out of the ditch. He said he did not see any tobacco on the truck at that time.

G. H. Rooker, Deputy Sheriff, testified that Arthur Robinson pointed out to him the place where he said the truck was stuck, and that it was opposite where the tobacco was found.

There was other evidence corroborative of and cumulative to the foregoing evidence tending to show that the defendants' truck was seen with tobacco on it before it reached the place where it was stuck, and that none was on it when seen thereafter.

The defendants went upon the witness stand and admitted being on the Lickskillet road in the early morning of 12 October, 1950. They further admitted that the truck they were operating got stuck at Walker's Hill that morning and had to be pushed out. However, they testified that no tobacco was on the truck at any time that morning, and in this they were supported and corroborated by the testimony of members of their family and other witnesses. They offered evidence tending to show that

they lived that year on nearby rented lands and had interests in about sixteen acres of tobacco; that they used the Lickskillet road in hauling their tobacco to market and made frequent trips over the road during the Fall of 1950; that on the early morning of the day before the plaintiff's tobacco is alleged to have been stolen, they carried a load of tobacco to market over this road. They said, however, that on the morning in question they were on another mission; namely, trying to locate Thomas Kearney for the purpose of surrendering him in court that day in order to prevent forfeiture of a fifty dollar cash appearance bond posted for Kearney by Charlie Alston. The defendants' theory of the case is that the State's witnesses are in error as to the time and place when they claim to have seen tobacco on the defendant's truck.

The jury returned a general verdict of guilty as charged on both counts in the bill of indictment as to each defendant. From judgment pronounced on the verdicts, each defendant appealed, assigning errors.

*Leon T. Vaughan and James D. Gilliland for defendants, appellants.*

*Attorney-General McMullan and Assistant Attorney-General Bruton for the State.*

JOHNSON, J. The defendants lay stress on their exception to the refusal of the court below to allow their motion for judgment of nonsuit made when the State rested its case and renewed at the close of the evidence.

True, the verdicts here rest entirely upon circumstantial evidence, "but circumstantial evidence is not only a recognized and accepted instrumentality in the ascertainment of truth, but it is essential, and, when properly understood and applied, highly satisfactory in matters of the gravest moment." *S. v. Brackville,* 106 N.C. 701, 11 S.E. 284; *S. v. Cash,* 219 N.C. 818, 15 S.E. 2d 277. "In some classes of cases the chain of evidence is said to be no stronger than the weakest link, but this is not always true, for sometimes facts, which seem weak by themselves, may be woven together like twigs in a bundle, or wires in a cable, and so a strong case may be constructed of facts which would be weak by themselves." Lockhart, North Carolina Handbook of Evidence, 2d Ed., Sec. 266, p. 316.

The motion to nonsuit under G.S. 15-173 "requires that the court ascertain merely whether there is any evidence to sustain the allegations of the indictment, and not whether it be true or the jury should believe it." *S. v. McLeod,* 196 N.C. 542, 146 S.E. 409.

Here, the series of incriminating circumstances, taken in its entirety, was sufficient to be submitted to the jury.

We have examined the other exceptions brought forward in defendants' brief and find in them no cause to disturb the results below. The defendants have had a fair trial under application of the correct principles of law.

No error.