DeLACY DRUMWRIGHT v. ELMER VERNON WOOD, ADMINISTRATOR OF THE ESTATE OF ZEB VANCE COLEY, DECEASED.

(Filed 14 January, 1966.)

1. **Automobiles § 41p—**

The identity of the driver of an automobile at the time of a collision may be established by circumstantial evidence.

2. **Automobiles § 41a—**

The doctrine of *res ipsa loquitur* does not apply to an automobile accident, and negligence will not be presumed from the mere fact of an accident and injury, and while negligence may be established by circumstantial evidence, an inference cannot rest upon mere conjecture.

3. **Same—**

The court may withdraw the issue of negligence from the jury only if the evidence is free from material conflict and the only reasonable inference to be drawn therefrom is either that there was no negligence on the part of defendant or that the negligence of defendant was not a proximate cause of the injury.

4. **Automobiles § 41p—**

Evidence that husband and wife were riding in an automobile, that she did not know how to drive, had never been seen driving, that shortly before the accident the husband was seen driving, together with physical evidence at the scene of the accident tending to establish that he was on the left and she was on the right at the time the accident occurred, *held* sufficient to be submitted to the jury on the question of the identity of the husband as the driver of the car.

5. **Automobiles § 41a—**

The accident in suit occurred when the car in question drove off the highway to its left at the end of a 400 foot curve to the right. The physical facts at the scene, including the fact of extensive damage to the car when it stopped in the ditch, the fact that it tore up several small pine trees, that it traveled 175 feet after leaving the road and dug up the bank of the road, that the tires were still inflated after the accident, etc., *held* sufficient to permit the inference that the accident was the result of excessive speed or reckless driving. G.S. 20-141(c), G.S. 20-141(b)(4), G.S. 20-140(b).

APPEAL by defendant from *Johnson, J.,* August 1965 Civil Session of ALAMANCE.

Civil action to recover damages for personal injuries allegedly proximately caused by the negligence of defendant's intestate Zeb Vance Coley, plaintiff's former husband, in the operation of his 1955 Chevrolet automobile, in which plaintiff was a passenger.

In her complaint she alleges Zeb Vance Coley was negligent in the operation of his automobile in the following respects: (1) He operated it in violation of G.S. 20-140, reckless driving; (2) he failed to decrease speed when approaching and going around a curve, in violation of G.S. 20-141(c); (3) he operated it at a speed in excess of 55 miles an hour, in violation of G.S. 20-141(b)(4); (4) he failed to keep a proper lookout; and (5) he failed to keep his automobile under proper control. That such negligence of Zeb Vance Coley was the proximate cause of the wrecking of his automobile and her injuries.

Defendant in his answer denies that his intestate was operating the automobile at the time it wrecked, and denies that his intestate was guilty of negligence.

The jury by its verdict found that plaintiff was injured by the negligence of defendant's intestate, as alleged in the complaint, and awarded her damages in the sum of $20,000.

From a judgment on the verdict, defendant appeals.

*Long, Ridge, Harris & Walker for defendant appellant.*
*Ross, Wood & Dodge by Harold T. Dodge for plaintiff appellee.*

PARKER, J.  In the record defendant has 16 assignments of error. However, he has brought forward and discussed in his brief one assignment of error, and that is to the denial of his motion for judgment of compulsory nonsuit made at the close of plaintiff's case, and to a renewal of a similar motion when he said he had no evidence to offer. Defendant in his brief states he "has elected to rely upon the nonsuit motions for purposes of this appeal." Rule 28, Rules of Practice in the Supreme Court, 254 N.C. 810, provides: "Exceptions in the record not set out in appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned by him."

Plaintiff's evidence, considered in the light most favorable to her, shows the following facts:

On 29 February 1964 plaintiff and defendant's intestate Zeb Vance Coley were married to each other. Since the death of Zeb Vance Coley, plaintiff has remarried. On this date Zeb Vance Coley owned a 1955 Chevrolet station wagon. Plaintiff did not know how

to drive an automobile. Several witnesses testified that they had known her for a number of years and had never seen her drive an automobile. About 9 p.m. on 29 February 1964 Zeb Vance Coley driving his Chevrolet station wagon arrived at James Floyd Allen's store, which is 10 miles from Highway #54 and 16 miles from the town of Graham. Plaintiff was riding with him as a passenger on the front seat. They bought some groceries and gas, stayed 10 to 15 minutes, and Zeb Vance Coley drove away. About 9:15 or 9:20 p.m. on the same night Zeb Vance Coley, with plaintiff as a passenger, driving his automobile arrived at the home of Eldridge McDaniel, which is situate three-fourths of a mile east from the intersection of Highway #54 with Phillips Chapel Road. Zeb Vance Coley came from the direction of the town of Graham. About 5 or 10 minutes after 11 p.m. Zeb Vance Coley, with plaintiff as a passenger, drove his automobile away from Eldridge McDaniel's home, and when he reached the Highway #54, he turned and proceeded on the highway in the direction of Phillips Chapel Road. Shortly after they left, Eldridge McDaniel got his automobile to carry Lawrence Daniel O'Neal and his wife, who were at his home, to their home. McDaniel, with the O'Neals as passengers, drove his automobile on Highway #54 to the entrance of Phillips Chapel Road, then proceeded south on Phillips Chapel Road, and about 11:35 p.m. they saw the Chevrolet station wagon of Zeb Vance Coley off Phillips Chapel Road down an embankment. They did not stop.

On 29 February 1964 Earl Michael Thompson and his wife were living in a house trailer situate about 150 to 200 feet north of Phillips Chapel Road, and about 1200 to 1500 feet south of the intersection of Highway #54 and this road. On the night of this day they and their guests, Mr. and Mrs. Stafford Wayne Hart, were playing cards in their house trailer. Mrs. Thompson testified: "I heard a loud roar and a big thud or bump around 11:15 p.m. I also heard a car horn. I jumped up and looked out the door. We could see headlights. Mr. Hart and I jumped in the car and drove down there." Stafford Wayne Hart testified: "I went to the scene of an accident that night. I was prompted to go there by the sound of a car crash and horn blowing. I heard this about 11:15." Earl Michael Thompson also went to the scene.

Upon arrival at the scene, this is what they saw: Zeb Vance Coley's Chevrolet station wagon was off Phillips Chapel Road and down an embankment to the left of the road for a person entering this road from Highway #54 and passing south by the Thompson home. The rear bumper of the station wagon was about two feet from Phillips Chapel Road and the station wagon was headed down the embankment about 20 feet from a small stream or culvert. Its

motor was not running, its lights were on, and its horn was blowing. There was a large hole through the windshield on the right side of the front seat, and the head and upper part of plaintiff's body to her midsection protruded through this hole onto the hood of the station wagon. She was cut about the face and was bleeding profusely. She was conscious. The body of Zeb Vance Coley, according to one version of the evidence, was sitting on the floorboard of the station wagon; according to another version of the evidence, he was in a sitting position in the front of the station wagon with his head against the passenger door and his body was holding plaintiff through the windshield. One of his feet was on the front seat in the area of the light switch, and his other foot was down in the area of the brake pedal. The front seat of the station wagon had broken away from its fastenings on the floor, and had gone forward. A heavy chain saw was at its back against it. The front end of the station wagon was pushed in and wrecked. They disconnected the horn. The steering wheel of the station wagon was bent. The station wagon was on its wheels, and all the tires were up and full of air.

Shortly after the wreck plaintiff and Zeb Vance Coley were carried in an ambulance to Alamance County Hospital. Upon arrival Zeb Vance Coley was dead. The left side of his chest was crushed flat, and all the ribs on that side were broken. Plaintiff sustained serious injuries which have already caused her to incur substantial hospital and medical expenses.

The scene of the wreck is about 1582 feet from Highway #54 if one enters Phillips Chapel Road from this highway and proceeds south along it by the Thompson house trailer. Phillips Chapel Road is a paved highway with pavement 18 feet wide. The culvert beyond which Zeb Vance Coley's station wagon stopped is about 1581.5 feet from the center of Highway #54 to the left of Phillips Chapel Road as one travels on it in a southerly direction from Highway #54. Phillips Chapel Road is a gentle fall until one gets to within 500 feet of the culvert, and then it is progressively more of a fall. There is a curve to the right that is about 400 feet long terminating approximately at the culvert. The shoulder of the highway there is about 6½ feet wide.

Alfred Cheney, Jr., a State Highway Patrolman, arrived at the scene about 11:35 p.m. that night. He testified:

"When I got there, there were no occupants in the automobile. I inspected the shoulders of the highway immediately north from where I found the Chevrolet automobile. I found nothing in the highway there. On the shoulder of the road there were tire marks that led up to the rear of the automobile for

approximately 150 to 175 feet from the left shoulder. These tire marks went off the road they led up to the highway approximately 150 to 175 feet from the automobile and went off on the shoulder down the embankment and hit the bottom of the embankment and hit a barbed wire fence on the left side and continued until it hit the culvert. The nature of the terrain on the left side of the road from where the car was, back north toward the highway, included a barbed wire fence leading up along the bottom of the embankment and there were some small trees, several of these trees were bent over.

"At or near the culvert at the locality where the automobile was situated the barbed wire fence was down and the posts holding the wire in that vicinity were down. I don't recall how many posts were down. The culvert that runs from the highway to the left had an impression in the southernmost side of it, the dirt was bare at that point, there was no brush or growth on it at that point.

"The automobile was located approximately 20 feet south from this point in the culvert. On the south side of the culvert, between the culvert and the automobile there were tire marks up the embankment leading to the rear wheels. The weather condition that night was dry, the road was dry. North of where I found the automobile there were no marks in the highway, the highway itself was intact, there were no holes in the road."

The maximum speed limit on Phillips Chapel Road at the place of the wreck was 55 miles an hour.

Charles L. Foster of Mebane drove his "wrecker" to the scene of the wreck about midnight that night to carry Zeb Vance Coley's Chevrolet station wagon away. He testified in substance, except when quoted: The Chevrolet station wagon was down an embankment on the left side of Phillips Chapel Road. The back end was sticking straight up and the front end was headed straight towards the woods. The chassis of the car was bent. The front bumper, the grille, the left and right front fenders, the hood, the radiator, the frame that comes out from the chassis that holds the bumper on were damaged. The steering wheel was bent. The dash on the right side of the automobile and the steering column were damaged, and there was a hole in the windshield on the passenger side. The front seat was tilted over the back rest. The tires were up and full of air. He testified: "There were small pine trees torn down, I would say 3 and 4 and 5 foot high. Then along the bank as it went off it was almost like a bulldozer, it dug up the bank, and it was a small

branch or culvert. I guess you would call it, and it had been re-
cently shoveled out, I guess by the State, and it knocked this big
bank over, then the car stopped on the opposite side of the culvert.
. . . I had occasion to measure the marks which I saw that night
from the shoulder of the road immediately north of where this car
was to where the car came to rest with a tape measure. I measured
them with a 100-foot tape measure. The measurement I found was
175 foot. I saw a driveway off the highway to a trailer. In my
opinion the distance from the driveway to where the wrecked car—
I'd say was approximately 200 ft. This 175 feet was from where I
first found marks after the car left the pavement to where I found
the car. From where that mark began all the way down to this
branch, the marks were sort of sloping down an embankment.
. . . The car had not been overturned or rolled over."

State Patrolman Cheney testified: "From Highway #54 Phillips
Chapel Road goes downhill. Going around the curve, it is all down-
hill. Just beyond the sharpest part of the curve there is a culvert
that runs away to the left from the highway. The car was approxi-
mately 20 feet past this culvert."

It is well-established law in this jurisdiction that the identity of
the driver of an automobile at the time of a collision or wreck may
be established by circumstantial evidence. *Yates v. Chappell*, 263
N.C. 461, 139 S.E. 2d 728; *McGinnis v. Robinson*, 252 N.C. 574,
114 S.E. 2d 365; *Stegall v. Sledge*, 247 N.C. 718, 102 S.E. 2d 115;
*Bridges v. Graham*, 246 N.C. 371, 98 S.E. 2d 492.

The doctrine of *res ipsa loquitur* does not apply in the instant
case, and negligence is not presumed from the mere fact that there
has been an accident and an injury. *Yates v. Chappell, supra; Johns
v. Day*, 257 N.C. 751, 127 S.E. 2d 543; *Lane v. Dorney*, 252 N.C. 90,
113 S.E. 2d 33; *Fleming v. Twiggs*, 244 N.C. 666, 94 S.E. 2d 821. An
inference of fact cannot rest upon conjecture. *Sowers v. Marley*,
235 N.C. 607, 70 S.E. 2d 670.

In *Yates v. Chappell, supra,* the Court said:

"The mere fact that a vehicle veers off the highway is not
enough to give rise to an inference of negligence. [Citing au-
thority.] But what occurred immediately prior to and at the
moment of the impact may be established by circumstantial
evidence, either alone or in combination with direct evidence.
[Citing authority.] The physical facts at the scene of an acci-
dent, the violence of the impact, and the extent of damage may
be such as to support inferences of negligence as to speed, reck-
less driving, control and lookout. [Citing authority.]"

In passing upon the question as to whether plaintiff considering her evidence in the light most favorable to her, has sufficient evidence of actionable negligence on the part of defendant's intestate to carry her case to the jury, "we must be guided by the accepted rule that the question of the liability of a defendant in an action for negligence can be taken from the jury and determined by the court as a matter of law by an involuntary nonsuit only in case the evidence is free from material conflict, and the only reasonable inference to be drawn therefrom is either that there was no negligence on the part of the defendant, or that the negligence of the defendant was not the proximate cause of the plaintiff's injury." Ervin, J., for the Court in *Thomas v. Motor Lines,* 230 N.C. 122, 52 S.E. 2d 377.

About 5 or 10 minutes after 11 p.m. on 29 February 1964 Zeb Vance Coley, with plaintiff in his Chevrolet station wagon as a passenger, drove. his station wagon away from Eldridge McDaniel's home, and when he reached Highway #54 he turned and proceeded on the highway in the direction of Phillips Chapel Road. When he drove away from the McDaniel home after a visit there of about two hours, there is no evidence that he was not well and in the full possession of his mental and physical faculties. The culvert beyond which Zeb Vance Coley's station wagon finally came to rest is about 1581.5 feet from the center of Highway #54 to the left of Phillips Chapel Road as one travels on it in a southerly direction from Highway #54. Plaintiff could not drive an automobile. The station wagon left Phillips Chapel Road to the left and went down the embankment about 11:15 p.m. on this night. Plaintiff's evidence and the position of Zeb Vance Coley and plaintiff in the station wagon when it stopped are sufficient to permit a jury to find that Zeb Vance Coley was driving his station wagon south on Phillips Chapel Road when the wreck occurred, and that plaintiff was a passenger in it.

Phillips Chapel Road was dry and there were no holes in it. There is no evidence of any other traffic on the road at the time. There is no evidence of any mechanical failure of the station wagon. The station wagon had not overturned, and it stopped with its tires up and full of air. Going south on this road there is a gentle fall until one gets to within 500 feet of the culvert, and then it is progressively more of a fall. On it is a curve to the right about 400 feet long terminating approximately at the culvert, about 20 feet beyond which the station wagon stopped. There were no tire or skid marks on the highway indicating the application of brakes. On the left shoulder of this road there were tire marks that lead 150 to

175 feet from the shoulder down the embankment to where the rear of the station wagon stopped, about 20 feet beyond the culvert. All this evidence, and the wire fence and its posts and pine trees 3 and 4 and 5 feet high knocked down, the big bank near the stream or culvert knocked over, the front seat torn loose from its fastenings, plaintiff's body thrown through the windshield to her midsection, the left part of Zeb Vance Coley's chest crushed flat and all the ribs on that side broken, the extensive damage to the station wagon, the "loud roar and big thud or bump" heard by persons in the Thompson house about 11:15 p.m., would permit inferences of fact by a jury that Zeb Vance Coley failed to decrease the speed of his station wagon when approaching and going around the curve in the road in violation of G.S. 20-141(c), was operating his station wagon at a speed in excess of 55 miles an hour in violation of G.S. 20-141(b)(4), was operating it in a reckless manner in violation of G.S. 20-140(b), that he failed to keep a proper lookout, and that all this caused him to lose control of his station wagon and to run off on the left shoulder of the curve and down the embankment, that this was negligence on his part in the operation of his station wagon, and proximately caused plaintiff's injuries. The court properly overruled defendant's motions for judgment of compulsory nonsuit.

The cases relied on by defendant are factually distinguishable. In *Ivey v. Rollins,* 250 N.C. 89, 108 S.E. 2d 63, the Court said: "The only established fact is that there was a collision when the automobile in which plaintiff's intestate was riding, traveling in its proper lane, 'suddenly swerved sharply' head-on into the bridge abutment." In *Fuller v. Fuller,* 253 N.C. 288, 116 S.E. 2d 776, eye witnesses estimated the speed of the truck, in which plaintiffs were riding, at 35 to 40 miles an hour. In *Crisp v. Medlin,* 264 N.C. 314, 141 S.E. 2d 609, no persons were in the wrecked automobile when a State patrolman saw it about 4:30 a.m. on the righthand shoulder of the highway. There was no evidence direct or circumstantial to show who was driving it at the time of the wreck. There was a left-hand curve on the highway near the scene of the wreck. The evidence did not disclose where the automobile was in respect to the curve in the highway when it wrecked. There was no evidence in the record as to whether the highway was wet, slick, or dry at the time of the wreck, or the condition of the highway.

The judgment of the trial court is
Affirmed.