GLENN E. HELMS v. W. REID REA, ADMINISTRATOR OF THE ESTATE OF MABEL REA, DECEASED

No. 84

(Filed 2 February 1973)

1. **Automobiles § 66— identity of driver at time of collision**
    The identity of the driver of an automobile at the time of a collision may be established by circumstantial evidence, either alone or in combination with direct evidence.

2. **Automobiles § 66— identity of driver at time of collision — circumstantial evidence**
    There was plenary circumstantial evidence which would have justified the trial judge in a personal injury and wrongful death action in finding that plaintiff was driving home from a party when the fatal accident occurred where such evidence tended to show that

Helms v. Rea

defendant's intestate disliked driving, plaintiff usually drove deceased's car when they were together, plaintiff drove to the party on the night of the accident and the positions of the bodies of plaintiff and deceased after the accident, injuries sustained by them and damages to the vehicle indicated that deceased was the passenger and plaintiff the driver.

3. **Rules of Civil Procedure § 41— nonjury trial — dismissal of action at close of plaintiff's evidence**

In a nonjury case Rule 41(b) now provides a procedure whereby, at the close of plaintiff's evidence, the judge can give judgment against plaintiff not only because his proof has failed in some essential aspect to make out a *prima facie* case but also on the basis of facts as he may then determine them to be from the evidence then before him, even though plaintiff has made out a *prima facie* case which would have precluded a directed verdict for defendant in a jury case. Except in the clearest cases, however, judgment should be deferred until the close of all the evidence.

4. **Rules of Civil Procedure §§ 41, 52; Appeal and Error § 63— nonjury trial — motion to dismiss at close of all evidence — failure of court to rule on merits — error**

In a personal injury action where defendant counterclaimed for wrongful death of his intestate, the trial court sitting without a jury was required by Rule 41(b) to consider and weigh all the evidence, to determine who was driving the vehicle when injury and death were sustained, and to render judgment on the merits of the claim and counterclaim in the form directed by Rule 52(a); dismissal of the counterclaim at the conclusion of all the evidence on the ground that there was no evidence upon which the trier of facts could find for defendant constituted error, and such misapprehension of the law required remand for a trial *de novo*.

Justice HIGGINS dissenting.

ON *certiorari* to review the decision of the Court of Appeals (15 N.C. App. 465, 190 S.E. 2d 290), which affirmed judgment for plaintiff entered by *McLean, J.,* at the 14 February 1972 "C" Session of MECKLENBURG.

Action for personal injuries and counterclaim for wrongful death and property damages.

Plaintiff and defendant's intestate, Mabel Rea, were the occupants of intestate's 1966 Mercedes Benz automobile when it left the traveled portion of the roadway at the intersection of Highway No. 16 (Providence Road) with R.P.R. 3612 (Cedar Lane) and collided with a utility pole and a cedar tree about 4:00 a.m. on 24 December 1968. Miss Rea died at the scene of the collision and plaintiff sustained serious and permanent injuries.

The crucial issue of fact is whether plaintiff or Miss Rea was driving when the vehicle left the highway. The parties

concede that the negligence of the driver proximately caused plaintiff's injuries and intestate's death.

Although both parties had demanded a jury trial as provided by G.S. 1A-1, Rule 38(b) (1969), when the case came on for trial they agreed that Judge McLean might find the facts and render judgment thereon. Rule 39(a) (1). At the conclusion of plaintiff's evidence defendant's motion for an involuntary dismissal under Rule 41(b) was denied. Defendant then introduced evidence, at the close of which plaintiff offered rebuttal evidence and then moved for the involuntary dismissal of defendant's counterclaim on the ground that defendant had offered no evidence which would sustain a finding that plaintiff was the driver at the time of the accident. The court set these motions for argument on a day subsequent. At that time the evidence was reopened, and defendant permitted to offer additional testimony. At the conclusion of all the evidence plaintiff moved "pursuant to Rule 41(b) and (c) of the North Carolina Rules óf Civil Procedure for an involuntary dismissal of the defendant's counterclaim on the grounds that defendant had failed to present sufficient evidence to carry the case to the jury."

On 24 February 1972, after reciting the preceding motion, Judge McLean entered the following order:

"AND THE COURT having heard the arguments of counsel for the Plaintiff and Defendant with respect to said Motion, being of the opinion and finding as a fact and concluding as a matter of law that the Defendant has failed to introduce sufficient evidence upon which the Defendant's Counterclaim and any issues arising thereon might be submitted to a jury;

"IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the Plaintiff's Motion for involuntary dismissal of the Defendant's Counterclaim be and the same is hereby allowed and the Defendant's Counterclaim is dismissed with prejudice . . . . "

On the same day Judge McLean signed his final judgment in the case. In it, *inter alia,* he found that defendant's intestate was the operator of the automobile at the time of the accident and that her negligence proximately caused plaintiff's injuries. He decreed that plaintiff recover the sum of $55,249.55 and the costs of the action and, for the second time, he dismissed defendant's counterclaim.

The Court of Appeals affirmed Judge McLean's judgment, and we allowed *certiorari*.

*Harkey, Faggart, Coira & Fletcher for plaintiff-appellee.*

*Craighill, Rendleman & Clarkson and Ervin, Burroughs & Kornfeld for defendant-appellant.*

SHARP, Justice.

This appeal presents a two-fold question: (1) Did Judge McLean err in granting plaintiff's motion to dismiss defendant's counterclaim [made under G.S. 1A-1, Rule 41(b) and (c)] on the ground that there was no evidence tending to show that plaintiff was the operator of the automobile at the time of the accident in suit; and (2) if so, since this was a nonjury case, was this error of law cured by the judge's subsequent finding in his judgment on the merits that Miss Rea was the operator of the vehicle and plaintiff the passenger? This question requires us to marshal the evidence, which—in pertinent part—is briefed below:

In December 1968 Miss Rea, as president and owner of 98% of the stock of Mabel Rea, Inc., was engaged in building Swan Run Village Apartments in Charlotte. Plaintiff was employed by the corporation as superintendent. Miss Rea had living quarters in a house in the Swan Run area. Plaintiff, along with his teenage son and daughter, also lived in the house.

Plaintiff frequently drove Miss Rea's two-door Mercedes Benz automobile, and on the night of 23 December 1968 he had attached to it the license plates which had been issued to him for his 1966 Thunderbird automobile. The Mercedes had two individual bucket seats in the front compartment; they were not equipped with seat belts. Between these two seats was a console, about seat level, which went to the fire wall.

About 10:00 p.m. on that evening plaintiff and Miss Rea arrived at the home of Mrs. Dotty Ross, where a Christmas party was in progress. Plaintiff wore a tuxedo and Miss Rea, a long, formal evening gown, the skirt of which "went to the ground." Her wrap was a mink (or ermine) stole. The weather was very cold.

Plaintiff's own testimony tended to show:

Before leaving Miss Rea's house for the party at about 9:30 p.m., both he and she had had "a little drink." He drove the

Mercedes to the home of Mrs. Ross. It was common knowledge that Miss Rea did not like to drive a car and that he "almost always did the driving" when he was with her. However, it was not unusual for her to drive home from a party. At Mrs. Ross's party they both "had something to drink" and had been drinking "in each other's presence." When they left Mrs. Ross's home about 4:00 a.m., Miss Rea was driving. She drove because the car had been parked on the curb and she would have had to walk through a mud puddle to get in on the right or passenger's side. At a point about 10 miles from the Ross home, driving south on Providence Road, Miss Rea approached its intersection with Cedar Lane at a speed of 70 m.p.h. She was "in the left most lane" where a left turn was required. To avoid hitting the median, which separated the lanes for north and south-bound traffic, she swerved to the right, then to the left, and back to the right into a utility pole and a cedar tree. When plaintiff saw there would be a collision, he picked up a glass which had been setting on the console and put it between his legs "so it wouldn't get broke." The collision occurred about ten miles from the Ross home.

Police Officers Luther and Rushing received notice of the accident about 4:18 a.m. At that time the temperature was 12° and everything was frozen. Luther arrived at the scene at 4:22 a.m. and Rushing came a few minutes later. Luther found the lights burning on the Mercedes, which was located a few feet south of the east line of Cedar Lane. The vehicle was sitting diagonally across the line separating the two southbound lanes of Providence Road and pointed toward the utility pole.

Miss Rea was lying face up in the highway, her body about parallel with the line dividing the lanes for southbound traffic. Her head was to the north (toward Charlotte) and her feet were pointed toward the right front wheel of the Mercedes. Varying estimates put her feet from 3-17 feet away from the wheel and her head from 15 or 20 feet to 8.5 or 10.5 feet away. Her stole was about two feet from her body; her small clutch bag, which contained no driver's license or other identification, was on the highway close to her. The right front door of the automobile was open; the left door closed. In the opinion of Officer Rushing Miss Rea was dead when he arrived at the scene. She had hemorrhaged from her nose, mouth, and ears. On the side of her face she had a lump that stuck out from her cheekbone about three inches. Her lips were swollen as if "she had hit something real hard." The coroner reported the cause of death as a broken neck and severe head injuries.

Plaintiff was partly in and partly out of the right side of the car. His legs "from some point near the knee" were in the car and the rest of his body was hanging out of the right door of the car to the pavement. His head was angling toward the rear of the car. He was unconscious and there was an odor of alcohol about him. He had suffered head injuries, facial lacerations, broken ribs, and a ruptured right kidney.

There was no damage to the roof of the car and none to the left side. There was considerable damage on the right side. The right fender of the Mercedes was damaged and the right side of the windshield broken. However, the hole in the windshield was not large enough for a person to have gone through it. The rearview mirror, which had been attached above the windshield over the console and had protruded downward several inches from the top of the windshield, was broken off. The bloody mirror was found on the pavement approximately one foot to the right of plaintiff's belt line. There was an indentation on the right door and also extensive damage to the body back of the right door. The right rear tire was flat.

Skid marks, 250-300 feet in length, led to the automobile. They began on the right side of Providence Road north of Cedar Lane, continued through the intersection, and into the utility pole and cedar tree. The pole was located in the southeast corner of the intersection about three feet from the curb line. The tree was in line with the pole and about six to eight feet south of it. The pole was broken and the cedar tree was so badly damaged it had to be removed. Debris from the impact was scattered about the area and onto the highway.

In the floorboard of the automobile, on the left side of the console, Officer Luther found an empty drinking glass from which came the strong odor of an intoxicant.

Approximately seven and a half weeks after the accident, on 14 February 1969, Officers Rushing and Luther interviewed plaintiff at his brother's home, where he was recuperating. Plaintiff told the officers that he had no recollection whatever of the accident or of preceding events; that the last thing he remembered was getting a haircut at least twelve hours prior to the accident. After making that statement he asked the officers what they thought had happened. Each told plaintiff that, in his view, the evidence pointed to him as the driver of the car. When he asked them on what they based that opinion the

officers told him that, in their opinion, the Mercedes was traveling out of Charlotte on Providence Road at a high rate of speed; that it hit the median curb, went out of control, hit the utility pole and tree, and was whirled around 23 feet; that he and Miss Rea were thrown out, that the construction of the car, its path before and after the impact, the position of the bodies, and the damage to the car convinced them that the person on the right must have fallen out first, and that plaintiff could not have possibly been sitting on the right. In reply to this plaintiff said that he could give them no information they did not have; that he just did not know who was driving. He never denied that he was the driver.

At the trial, on cross-examination, plaintiff testified that when Rushing and Luther interviewed him he knew they were investigating a possible manslaughter case; that notwithstanding, and although he knew Miss Rea was driving and he was not, he told the officers he did not know who was driving the Mercedes. When asked why he didn't drive the car home from the party he said that, upon arriving at Mrs. Ross's, he had parked the vehicle on the shoulder of the road; that when they "came out it just so happened that there was a mud puddle there" on the passenger's side, and Miss Rea had said, "I'll drive."

Plaintiff admitted that since the accident he had been convicted of driving while intoxicated. He also said he could not remember all the speeding tickets he had received from time to time.

Billy Gene Somerset, a witness for defendant and a former escort of Miss Rea's, testified that at some indefinite time in the early morning hours of December 24th he had passed her Mercedes Benz on Rama Road and recognized plaintiff as the driver and Miss Rea as the passenger.

[1]   It is well established in this jurisdiction that the identity of the driver of an automobile at the time of a collision may be established by circumstantial evidence, either alone or in combination with direct evidence. *Drumwright v. Wood*, 266 N.C. 198, 146 S.E. 2d 1 (1966); *Thomas v. Morgan*, 262 N.C. 292, 136 S.E. 2d 700 (1964); *Pridgen v. Uzzell*, 254 N.C. 292, 118 S.E. 2d 755 (1961); *Bridges v. Graham*, 246 N.C. 371, 98 S.E. 2d 492 (1957). "[C]ircumstantial evidence is not only a recognized and accepted instrumentality in the ascertainment of

truth, but is essential, and, when properly understood and applied, highly satisfactory in matters of the gravest moment." *State v. Alston,* 233 N.C. 341, 344, 64 S.E. 2d 3, 5 (1951). When sufficiently strong, circumstantial evidence is as competent as positive evidence to prove a fact. "In many instances facts can be proved only by circumstantial evidence, and in some instances even though there is direct testimony, the circumstantial evidence given may outweigh or be more satisfactory and convincing than direct or positive testimony." 30 Am. Jur. 2d *Evidence* § 1091, at 249-50 (1967). *See also Thomas v. Morgan, supra; Trust Company v. Railroad,* 208 N.C. 574, 181 S.E. 635 (1935).

[2]  In this case, without taking into account the testimony of Somerset, plenary circumstantial evidence would have justified the judge in finding that plaintiff was driving the automobile when it was wrecked. We direct attention to some of the evidence from which it could be reasonably and legitimately inferred that plaintiff was the driver.

Miss Rea disliked to drive a car. Plaintiff was accustomed to drive her Mercedes and usually drove it when they were together. He drove to the party. Miss Rea was dressed in a full-length, formal evening gown and wearing a fur stole—a costume in which no woman would ordinarily drive an automobile. After the collision the door on the driver's side was closed; the door on the passenger's, open. Miss Rea was thrown clear of the car. Plaintiff's legs were in the car; the upper part of his body was hanging out of the right door. The position of the bodies indicated that Miss Rea was thrown out first. The bucket seats and the console between them in the small front compartment would have prevented, or made highly improbable, her passage over plaintiff. Miss Rea's small clutch bag was found near or on her body—an unlikely location for it had she been driving. The hole in the windshield on the passenger's side is consistent with her broken neck and severe facial injuries. The rearview mirror, which had been attached above the center of the windshield and protruded downward, was found, covered with blood, near Helms. He had sustained an injury to his right eye so severe that it had to be "sewed back in." These facts tend to show that Helms's head struck and detached the mirror from his passage over the console. His broken ribs and ruptured kidney were consistent with "a steering wheel injury."

Defendant's statement to the investigating officers that he remembered nothing about the collision and none of the

events preceding it, and his explanation that Miss Rea preferred to drive home rather than have him move the car so that she would not have to cross a mud puddle on a night when everything else was frozen, go to the weight of his testimony and not to the sufficiency of the evidence to establish the identity of the driver.

Had this been a jury trial and Judge McLean directed a verdict under Rule 50(a) against defendant on his counterclaim at the close of the evidence, such a ruling would clearly have been erroneous, and any judgment on issues thereafter submitted to the jury in plaintiff's action would be set aside and a trial *de novo* ordered. *See Kelly v. Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396 (1971).

In a nonjury case after the plaintiff (or the defendant, if the motion is directed against a counterclaim) has presented his evidence and rested his case, defendant may move under Rule 41(b) for a dismissal "on the ground that upon the facts and the law plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a)." This motion for an involuntary dismissal replaces the old motion for nonsuit in nonjury cases.

Under the former practice the motion for nonsuit presented the question whether plaintiff's evidence, taken as true, would support findings upon which the trier of facts could properly base a judgment for plaintiff. In ruling upon this motion the judge did not pass upon the credibility of the evidence either in a jury or a nonjury case. *Harrison v. Brown*, 222 N.C. 610, 24 S.E. 2d 470 (1943); 7 Strong, N. C. Index 2d *Trial* §§ 22, 58 (1968). In a jury case the motion for a directed verdict embodies the motion for nonsuit. There is no substantial difference between the two. *Younts v. Insurance Company*, 281 N.C. 582, 189 S.E. 2d 137 (1971).

[3] In a nonjury case, however, Rule 41(b) now provides a procedure whereby, at the close of plaintiff's evidence, the judge can give judgment against plaintiff not only because his proof has failed in some essential aspect to make out a case but also on the basis of facts as he may then determine them to be from the evidence then before him. As trier of the facts, the judge

may weigh the evidence, find the facts against plaintiff and sustain defendant's motion at the conclusion of his evidence even though plaintiff has made out a *prima facie* case which would have precluded a directed verdict for defendant in a jury case. 5 Moore, *Federal Practice* § 41.13[4], at 1159 (1971); Phillips, 1970 Supplement to 1 McIntosh, *North Carolina Practice and Procedure* § 1375. (For the off-cited criticism of this rule by a noted scholar, see Steffen, *The Prima Facie Case in Non-Jury Trials,* 27 U. Chi. L. Rev. 94 (1959).)

The judge is not compelled to make determinations of facts and pass upon a motion for involuntary dismissal at the close of plaintiff's evidence. He may decline to render any judgment until the close of all the evidence and, as suggested by Phillips, "except in the clearest cases" he should defer judgment until the close of all the evidence. This was the view adopted in *Rogge v. Weaver,* 368 P. 2d 810, 813 (Alas. 1962). See the comment on this case in 9 Wright & Miller, *Federal Practice and Procedure* § 2371, at 226-27 (1971).

The significance of the motion to dismiss is that it *may* be made at the close of the plaintiff's case. "There is little point in such a motion at the close of all the evidence, since at that stage the judge will determine the facts in any event. . . . When the judge decides the case, either on a motion for dismissal or at the close of all the evidence, he must make findings of fact and state separately his conclusions of law. . . . Such findings are intended to aid the appellate court by affording it a clear understanding of the basis of the trial court's decision, and to make definite what was decided for purpose of res judicata and estoppel. Finally, the requirement of findings should evoke care on the part of the trial judge in ascertaining the facts." Wright, *Law of Federal Courts* § 96, at 428-29 (1970). *See also* 9 Wright & Miller, *Federal Practice and Procedure* § 2371, at 222 (1971).

[4] Judge McLean did not dismiss defendant's counterclaim in midtrial. He dismissed it at the conclusion of all the evidence on the ground that defendant had failed to offer sufficient evidence that plaintiff was driving the Mercedes to take his counterclaim "to the jury." Clearly, this reference to "the jury" was an inadvertence. However, the presence or absence of any evidence tending to establish a specific fact remains a question of law whether the trier of facts be judge or jury. Despite

plaintiff's positive testimony that Miss Rea was driving the automobile, the record contained plenary evidence to support a finding that plaintiff himself was operating the vehicle.

In dismissing defendant's counterclaim Judge McLean did not purport to rule upon the credibility of the evidence and find the facts against defendant. He dismissed the counterclaim on the ground that there was no evidence upon which the trier of facts could find for defendant. This ruling was error. All the evidence being in, it was incumbent upon the judge to consider and weigh it all, determine who was driving the vehicle, and render judgment on the merits of the claim and counterclaim in the form directed by Rule 52(a).

Plaintiff contends that the judge did in fact rule on the merits of the entire case; that, although he entered an order dismissing defendant's counterclaim at the close of all the evidence, he immediately thereafter made findings of fact adverse to defendant and entered judgment for plaintiff; and that the "cumulative effect" of the order and judgment was a "complete determination of facts and the law." This contention ignores the fundamental error in the case.

The decisive issue in both plaintiff's claim and defendant's counterclaim was whether plaintiff or Miss Rea was driving the Mercedes. Having erroneously concluded that there was no evidence that plaintiff was driving the car, it necessarily follows that the judge failed to consider much evidence of substantial probative value tending to establish defendant's counterclaim. His finding that Miss Rea was operating the automobile at the time of the accident was unavoidably affected by his misapprehension of the applicable law. Indeed, the dismissal of the counterclaim for the reason stated, preordained this finding since either plaintiff or Miss Rea was driving the car.

It is still the rule that "[f]acts found under misapprehension of the law will be set aside on the theory that the evidence should be considered in its true legal light." *McGill v. Lumberton*, 215 N.C. 752, 754, 3 S.E. 2d 324, 326 (1939). *See also Davis v. Davis*, 269 N.C. 120, 127, 152 S.E. 2d 306, 312 (1967); *Owens v. Voncannon*, 251 N.C. 351, 355, 111 S.E. 2d 700, 703 (1959); *In re Gibbons*, 247 N.C. 273, 283, 101 S.E. 2d 16, 23-24 (1957). Accordingly, the judgment is vacated and the cause remanded to the Court of Appeals to the end that it be returned to the Superior Court for a trial *de novo* before a jury

unless the parties again waive the right to a jury trial, which they reserved initially. *See Jackson v. Gastonia,* 247 N.C. 88, 90, 100 S.E. 2d 241, 243 (1957).

New trial.

Justice HIGGINS dissenting.

This case grew out of a one car accident which occurred about 4 a.m. on December 24, 1968. The plaintiff Helms and the defendant's intestate, Miss Rea, were the only occupants of a 1965 Mercedes Benz automobile when the accident occurred.

The vehicle involved belonged to Miss Rea. There appears to have been no other witness to the wreck. However, there was overwhelming evidence that the automobile was traveling at a great rate of speed at the time it left the road and that the driver was guilty of gross negligence.

Mr. Helms instituted this action for damages alleging that Miss Rea was the driver and that he was a passenger and that her negligence caused the wreck and his serious injuries. Miss Rea's administrator answered, denying that Miss Rea was the driver or was in any way negligent or responsible for the accident. The administrator set up a counterclaim alleging that Helms was the driver, that Miss Rea was the passenger, and that his negligence caused the accident and her death. The plaintiff filed a reply to the counterclaim denying its material allegations and repeated his demand for damages.

After the issues were joined by the pleadings, the parties, as authorized by Rule 39 (a), Civil Procedure, stipulated that the case be heard by the presiding judge. At the conclusion of the hearing the judge made among others the following findings:

"16. The defendant's intestate was the operator of the Mercedes automobile at the time of the accident on December 24, 1968.

"17. That the plaintiff was a passenger in said Mercedes automobile at the time of the accident on December 24, 1968.

"18. That the defendant's intestate was negligent in the operation of said Mercedes automobile in the following respects:

(a) That she operated the automobile at a speed that was greater than was reasonable and prudent under the circumstances then and there existing.

(b) That she failed to observe the highway and to keep a proper, reasonable and careful lookout.

(c) That she failed to keep the vehicle under proper control.

"19. That such negligence on the part of the defendant's intestate was the proximate cause of the accident and the injuries and damage suffered by the plaintiff."

The court entered this judgment:

"Based upon the above Findings of Fact and Conclusions of Law, the Court entered Judgment as follows:

"1. That the plaintiff have and recover of the defendant the sum of $55,249.55.

"2. That the defendant have and recover nothing by way of his counterclaim and that the same be dismissed."

The Court complains and orders a mistrial, not upon the basis of facts found, but upon the judge's comments during the hearing in explanation of his dismissal of the counterclaim. It is my view that the findings of fact that Miss Rea was the driver and that Helms was the passenger and that the driver's negligence caused the wreck and the passenger's injuries required the dismissal of the counterclaim. The findings were conclusive as to the identity and the negligence of the driver. After the findings that Miss Rea was the driver and was negligent and the negligence resulted in plaintiff's injuries, no room was left for a finding on the same evidence that Helms was the driver and that his negligence caused the death of the defendant's intestate. Therefore, the court's comments as to his reasons for dismissing the counterclaim are immaterial.

I vote to affirm the decision of the Court of Appeals.